JOHN C. CHAMBERLAIN *vs.* THE CITY OF BRIDGEPORT.

Third Judicial District, Bridgeport, April Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Prior to the Act of 1889 consolidating the town and city of Bridgeport (10 Special Laws, p. 854), they were independent political entities charged with independent duties and burdens and having separate grand lists and tax levies. Each had power to levy taxes for its own purposes. The Consolidation Act provided that the city should assume the duties, burdens, and expenses formerly borne by the town; that it should be divided into two districts, the first comprising the entire consolidated territory, and the second, all the territory within the limits of the city as they existed on January 1st, 1889; that appropriations must thereafter be made and taxes levied separately for each district; that the inhabitants and property within the limits of the first district should be liable to taxation to defray the burdens and expenses formerly borne by the town, and one or two others expressly mentioned, only to the same extent that they would have been liable had there been no such transfer of burdens from town to city; and that all the other burdens and expenses of the city should be met by taxes levied upon the inhabitants and property within the limits of the second or smaller district. As a result of these provisions the inhabitants and property in the territory added to the city by the Act could be taxed only for the same purposes for which taxes could have been levied upon them had there been no consolidation. This situation remained substantially unchanged during various revisions and amendments of the charter, until 1913, when the Act in question (16 Special Laws, p. 1203) was passed. Its first section repealed the clause of the Consolidation Act dividing the city into two districts; but the second section re-enacted, in the very words of the Consolidation Act itself, the limitation respecting taxation which that Act imposed for the benefit and protection of suburban residents and property, the only change being the substitution of the word "city" for the words "first district," which was a mere change of name for the same territory. Upon a suit by the owner of land consisting mainly of rough pasture, swamp, and wood land lying outside the limits of the city proper or former second district, to restrain the city from levying taxes upon it to meet expenses incurred for city purposes only, it was *held:*—

1. That this limitation or distinction was created and maintained in order to restrict the liability of the inhabitants and property of the

former town outside the old city limits, to taxation for so-called town burdens and expenses only; that this was obviously a reasonable and just distinction and limitation, and one which had been adopted and followed by other cities in their consolidation Acts modeled after that of Bridgeport, until this principle might now be fairly said to have become the well-established legislative policy of the State; and that it was not dependent upon the creation and continued existence of formal districts, and therefore did not fall merely because the districts themselves were abrogated.

2. That the Act of 1913 did not confer upon the city any greater power or authority to tax agricultural or waste land in the suburban or outlying territory than it previously possessed; nor, on the other hand, did it deprive the city of the right, conferred upon it by § 96 of the revised charter of 1907, to levy taxes, for all lawful purposes of the city proper, upon land within its limits, that is, upon the land within the limits of the second district as that existed before its elimination.

In construing a statute the real question is, not what the legislature actually meant to say, but what is the meaning of what it did say.

Municipalities have no powers of taxation other than those specifically given by statutes.

Argued April 23d—decided July 17th, 1914.

ACTION to restrain the defendant from levying taxes upon the land of the plaintiff for the purpose of defraying any other burdens or expenses than such as said land would have borne before the consolidation of the town and city of Bridgeport, brought to and tried by the Superior Court in Fairfield County, *Curtis, J.,* upon demurrer to the complaint; the court sustained the demurrer and, upon the refusal of the plaintiff to plead further, rendered judgment for the defendant, from which the plaintiff appealed. *Error and cause remanded.*

*John C. Chamberlain* and *Thomas M. Cullinan,* for the appellant (plaintiff).

*William H. Comley, Jr.,* for the appellee (defendant).

WHEELER, J. The complaint alleges that the plaintiff is the owner of upward of two hundred and fifty

acres of farm land in the town of Bridgeport, most of which is rough pasture, swamp, and wood land, all of which lies outside the bounds of the city as they existed prior to the passage of the Act consolidating the town and city of Bridgeport (10 Special Laws, p. 854), and thereafter lay within the limits of the first district. This Act divided the city into two taxing districts.

It is alleged that the land is without the benefit of sewers, lights, fire and police protection, that much of it is above the water-supply of the city, that none of it can be benefited by the expenditures made for the second district as designated by that Act, and that the benefits for which the city of Bridgeport proper, or the second district, has been bonded, have not been enjoyed by this land or by the first district in which it lies, and that the bonded indebtedness of the city, comprising the second district, was not incurred by, or for the benefit of, the first district.

The plaintiff further alleges that the defendant purposes raising a revenue, by taxation upon this land, which it purposes expending in the second district, and prays for an injunction restraining the defendant from levying a tax upon his land for the purpose of raising money to meet any expense except such as said land would have borne prior to consolidation and for the support and care of the public library.

The defendant demurs to the complaint; its grounds are in reality two: (1) The defendant is authorized by its charter and under the law to levy such taxes. (2) The plaintiff has a complete remedy at law.

The town and city of Bridgeport, prior to the Consolidation Act of 1889, were independent political entities, charged with independent duties and burdens. The tax levy of town and city covered different territories, and of necessity each had a different grand list and tax levy. This Act transferred to the city control

of the annexed territory, and imposed upon it the duties, burdens, and expenses formerly borne by the town. The city assumed the debt of the town, whose rights and property were vested in the city.

The first charter of the city of Bridgeport (Special Laws of 1836, p. 355, § 5, gave it power to levy taxes within its limits "for such purposes as said city shall think proper." This identical provision is found in the several revisions up to 1895. It was in the charter as revised in 1887 (10 Special Laws, p. 510), and existed at the time of the passage of the Consolidation Act. That Act amended the charter by imposing upon the city the additional burden of meeting all burdens and expenses theretofore imposed by law upon the town. These several burdens were specified in § 4.

By § 7 of this Act, "said city in legal meeting assembled shall have power to levy taxes on the polls and estate within the limits of said city for such purposes as said city is by law authorized." The city had had the power to levy taxes for its own purposes of government, and these of necessity included, without detailed specification, all powers of government committed to it. This section reaffirmed that power. For all such, the levy of taxes was "authorized by law." The Act imposed the burdens and expenses of the town upon the city. The city meeting was thus empowered to levy taxes within the limits of the city—and these now comprised the entire town—for the governmental purposes of the city as its limits had been—which may be called the old city limits—and for the burdens and expenses theretofore imposed upon the town. Neither from its terms, nor by implication, can the burdens and expenses referred to in § 4 be construed to include those of the old city as distinguished from those of the town. For purposes of taxation, the territory of the new city was divided into two districts: the first dis-

trict comprised the entire city, the second, all the territory that lay within the limits of the city on January 1st, 1889.

The power of the city meeting to levy taxes was limited by the Act. Appropriations must be made for each district of the city from the revenues of that district, and taxes levied therefor upon the grand list of that district. This was effected by § 6: "All the inhabitants and property within the limits of the first district shall be liable to taxation to defray the burdens and expenses imposed upon said city by this Act to the same extent as they would be liable if said burdens, expenses, duties, and powers had not been transferred from said town to said city"; and in addition certain other expenses; "and all other burdens and expenses of said city shall be met by taxation levied upon the inhabitants and property within the limits of the second district." Moneys raised by taxation in the first district could only be used for purposes which prior to consolidation were within the corporate authority of the town. The inhabitants and property of the first district outside the bounds of the city as they existed prior to consolidation, could be taxed only for purposes for which the town could be taxed prior to consolidation. These could not be taxed for purposes which were within the corporate authority of the city prior to consolidation. For purposes of taxation, the inhabitants and property within the limits of the new city, and those of the city as it existed before consolidation, were two independent entities. By § 7 the grand list of the town for 1888 is made the grand list of said city for the first district, and the grand list of the city is made the grand list for the second district.

The burdens and expenses referred to in § 6 were those transferred from the town to the new city, and were the same burdens and expenses imposed upon the

town by, and specifically described in, § 4. In § 6 is also a specific provision that "all other burdens and expenses of said city shall be met by taxation levied upon the inhabitants and property within the limits of the second district." These provisions clearly define the limitation upon the right of taxation as to each district.

The burdens and expenses which must be met by the second district would have been necessarily implied without particular specification, from the power of the city to levy taxes contained in § 7, and from the limitation of liability of the first district to the town burdens and expenses.

The reasons which led the framers of the Act to make this limitation are not hidden. More of the territory of the town lay outside the city, as it was, than within it. Agricultural and waste land ought not to bear a rate of taxation identical with city property having the advantages of municipal improvements and benefits. The General Assembly was familiar with this principle of taxation, and its Acts not infrequently had recognized it. A part consideration of this transfer of the territory of the town to the city may well have been the provisions for exemption from the city debt, and for freedom from liability to be taxed for purposes serving the city and not imposed by law upon the town.

In 1893 (11 Special Laws, p. 278) the General Assembly created a board of apportionment and taxation for the city of Bridgeport, and invested it with power (§ 5) "to levy taxes on the polls and estate within the limits of said city, for such purposes as said city is by law authorized." In this board was vested the power to levy taxes and make appropriations theretofore exercised by the city in legal meeting assembled under § 7 of the Consolidation Act. Its power to levy taxes was subject to certain limitations, just as the action

of the city meeting had been. It must make appropriations for each district from the revenues of that district, and levy the tax therefor upon the grand list of that district. This limitation upon its power was as definite as those providing that appropriations must be made for lawful purposes and in the method prescribed by law, that the expenditures of the city in any year could not exceed its revenues, and that no appropriation could be made unless funds for the same were provided by tax, or from revenues on hand and not otherwise disposed of, or from both. The board was thus vested with power to levy taxes to meet the burdens and expenses imposed by law, including those theretofore imposed upon the town which were as they had been, and as specified in § 4.

The Consolidation Act was, we incline to believe, in its method of treatment, a piece of constructive legislation; for we have not discovered an exactly similar treatment of this governmental problem in any jurisdiction. Its framers have had their handiwork either copied or its main features adopted in every one of the numerous Acts of consolidation passed by our General Assembly since its enactment. These several Acts have in many cases adopted the language of §§ 4 and 6 of the Bridgeport Consolidation Act, or else limited the rate of taxation of the districts outlying the limits of the city. In every instance called to our attention, with a single exception, a distinction has been made between the land outside the city proper and constituting the territory outside the city subject to town government, and that within the city limits. Agricultural and waste lands are placed upon a different basis of taxation from land and premises within the limits of the city proper. So universal has been this practice that we are justified in assuming it to be the settled course of Connecticut legislation and to repre-

sent its fixed legislative intent. The limitation contained in § 6 has thus been repeatedly enacted in many of the consolidation Acts passed since the Bridgeport consolidation. Its meaning has become settled, and each enactment was made with this meaning in view. It would be difficult to find an example of legislative language more frequently used in municipal charters.

The Consolidation Act of Bridgeport was amended in 1889 (10 Special Laws, p. 1285, § 2), by adding to the burdens and expenses of taxation imposed upon the inhabitants and property within the limits of the first district, the maintenance of the public library. This Act reiterated the legislative intent as expressed in § 6.

The charter of Bridgeport was revised in 1895 (12 Special Laws, p. 515). The bounds of the second district were, as we understand, somewhat extended over the city limits as they existed on January 1st, 1889, and the Consolidation Act, with the amendment relating to the public library, was incorporated therein, and §§ 4 and 5 of the charter were identical in language with §§ 4 and 6 of the Consolidation Act as amended. Again the provision imposing upon the city the burdens and expenses placed upon the town prior to consolidation, was re-enacted in § 4. The draftsman, in making use of the very language of § 6, did not express with clearness the idea intended. In imposing liability for taxation upon the first district to the same extent as if "the burdens, expenses, duties, and powers had not been transferred from said town to said city," he failed to take cognizance of the fact that these burdens and powers had, by the Consolidation Act, been transferred from said town to said city, and hence could not be transferred in the Act revising the charter. But the intent of § 5 was clearly that of § 6 of the Consolidation Act. It was intended as a reiteration

of the limitation imposed by that section. This is conceded; and all taxes have been laid under this revision of the charter as they had been laid after consolidation. Separate taxes have been levied on each district upon the grand list of that district.

In 1901 (13 Special Laws, p. 827) the boundaries of the districts were, we understand, changed, but the other features of the Consolidation Act were unchanged.

In 1907 (15 Special Laws, p. 493) the charter was again revised, and the bounds of the districts changed. This is the latest revision. The power of the board of apportionment to levy taxes remained (§ 96), and § 5 continued to be identical with § 5 of the revision of 1895, and with § 6 of the Consolidation Act with the addition of the burden of maintenance of the public library.

Again the language of the section was inartificially drawn, but the intent was clear. The right of the board of apportionment to make appropriations for each district was limited to the revenues of that district, and their right to lay a tax therefor was limited to the grand list of that district. The board could not appropriate the moneys of the second district to build a sewer in the first district, neither could it appropriate the moneys of the first district to build a sewer in the second district. It could not levy a tax upon the first district to help meet the burdens which were imposed upon the second district by § 4 of this revised charter.

Our review of this legislation shows that from the Consolidation Act down to the passage of the amendment of 1913 (16 Special Laws, p. 1203), taxes could not be laid upon the inhabitants and property of the first district save for the purposes for which they would have been liable prior to the consolidation; and these burdens and expenses still remain those imposed upon

the town prior to consolidation which are those specified in § 4. The first district was only liable for town taxes so-called. In 1913 the area of the first district outside the second district was, as appears by the standard maps, about as large, if not larger, than the area within the bounds of the second district. The same reasons then apparently existed for continuing the limitation upon the taxation of the part of the first district lying outside the second district, as existed at the time of the Consolidation Act and the revisions of the charter to which we have referred.

The charter of Bridgeport was amended in 1913 by an Act approved June 5th (16 Special Laws, p. 1203) as follows:—

"Section 1. Section two of an act revising the charter of the city of Bridgeport, approved August 1, 1907, dividing the city into two districts, is hereby repealed.

"Sec. 2. Section five of said act is hereby amended to read as follows: All the inhabitants and property within the limits of said city shall be liable to taxation to defray the burdens and expenses imposed upon said city by this act to the same extent as they would be liable if said burdens and expenses had not been transferred from said town to said city, and in addition thereto for the expense of maintaining the public library and reading room of said city.

"Sec. 3. Wherever in said act the words 'both districts of,' the words 'either district of,' the words 'in each of its districts,' the words 'districts of,' or the words 'of either district' appear, said words are hereby struck out."

The Act abolished the two taxing districts; but it re-enacted substantially the first part of § 5 of the revision of 1907, merely striking out the words "first district" and substituting the word "city" in line two.

The city contends that with the elimination of the

two districts, the necessity for limitation of the taxing power also disappeared. Manifestly this Act does not expressly so provide. If this be its intent, it is one to be implied, for it is not stated. "Municipalities have no powers of taxation other than those specifically given by the statutes." *New Britain* v. *Mariners Savings Bank*, 67 Conn. 529, 532, 35 Atl. 505; *O'Connor* v. *Waterbury*, 69 Conn. 206, 211, 37 Atl. 499. This amendment should be construed with reference to existing provisions of the charter and in the light of the history and progress of this legislation. In reality the question is not what the legislature actually meant to say, but what is the meaning of what it did say. *State* v. *Faatz*, 83 Conn. 300, 305, 76 Atl. 295.

In the Act consolidating the town and city of Meriden, approved June 5th, 1913 (16 Special Laws, p. 1174), we find, in § 65, a division of the territory into two districts, for purposes of taxation, and a similar imposition of town burdens (§ 3), and a similar limitation of taxation upon the inhabitants and property lying outside the bounds of the then city (§ 66).

In the Act consolidating the town and city of Norwalk (16 Special Laws, p. 1038), the territory is divided into districts for purposes of taxation, and in §§ 6 and 10 is a similar imposition of town burdens and a limitation upon the right of taxation of the outlying territory, in practically the language of §§ 4 and 6 of the Bridgeport Consolidation Act.

The territory comprised within the first district was the entire territory of the city. With the change of terms the amendment has not changed the territory affected, nor the meaning of the part of § 5 which it re-enacts. "All the inhabitants and property within the limits of said city," includes precisely the same inhabitants and property as the phrase of § 5 of the revision of 1907, "All the inhabitants and property

within the limits of the first district." The town burdens and expenses imposed upon the city by the Consolidation Act remained as they then were and as they had been enumerated in § 4 of the Consolidation Act and the several charter revisions. These, and these only, were the burdens and expenses imposed upon the inhabitants of the first district by § 6 of the Consolidation Act and § 5 of the charter of 1907.

The amendment of § 5 leaves the part re-enacted in the same form, and its language refers to no other than the town burdens and expenses referred to in § 4, which are the same burdens and expenses this language has always referred to. This, the city concedes, has been the construction placed upon this language in the several revisions.

The amendment (§ 2) further provides that the inhabitants and property within the city shall be liable to taxation to defray these burdens and expenses, which are the town burdens and expenses, "to the same extent as they would be liable if said burdens and expenses had not been transferred from said town to said city." This provision, as found in the Consolidation Act and in the several charters, constituted a limitation upon the power of the city meeting and of the board of apportionment to levy taxes upon the inhabitants and property of the first district, except to defray the so-called town burdens and expenses; and the amendment imposed a similar limitation upon the inhabitants and property of the city which were the same as those of the first district. It provided that the levy to defray these town burdens and expenses could not be greater than the inhabitants and property would have been subjected to had the town burdens and expenses not been transferred to the city by the Consolidation Act.

This language of limitation, as we have pointed out, has a definite meaning fixed by repeated legislative

·enactments, by a settled course of construction and by action taken thereunder.

We are now asked to hold that the language of the amendment, which is that of the Consolidation Act, does not have the meaning which it concededly has had from 1889. This conclusion will compel a holding that the General Assembly, while re-enacting in the charters of Meriden and Norwalk this principle of limitation from which no departure has ever been made, intended to repudiate the principle in the Bridgeport amendment passed at the same session. Indeed, the conclusion involves the holding that the General Assembly, in an Act approved June 5th, used language with one meaning, and on June 7th used practically the same language with a different meaning.

This limitation upon the right of taxation is not dependent upon the division into districts. It was created in order to limit the liability of the inhabitants and property of the former town, to town burdens and expenses. The amendment has not altered the tax obligations of the inhabitants and property of the entire city. This is another name for the first district.

The amendment omitted the latter part of § 5 of the revision of 1907, wherein was described the burdens and expenses of the city to be met by taxation of the inhabitants and property within the limits of the second district, or the city proper. That omission did not tend to enlarge the meaning of the first half by making it apply to all the burdens and expense of the entire city. Nor did it take from the city the authority to levy taxes for the purposes of the city as its limits existed and which comprised the second district. The authority to levy taxes for city or second-district purposes, is found in § 96, giving the power to levy taxes for purposes by law authorized, among which are provision for the governmental functions vested in the

municipal government by the charter. When the specification relating to the city proper, or second district, was removed, it did not change the legislative purpose or the power of the board of apportionment to levy taxes. The general power to levy taxes for purposes authorized by law (§ 96) is limited by confining the levy for the town burdens and expenses to the inhabitants and property of the entire city. Section 96 has never authorized a levy except for city purposes upon the city proper, or second district, and upon the entire city, or first district, for town purposes. The amendment did not change this section.

If the framers of this amendment sought by it to make all of the property and inhabitants of the outlying district liable to taxation in the same degree as if its location were in the heart of the city, their purpose as to the land of the plaintiff was an unjust one. We do not consider whether an Act of that character and effect would be legal. The authorities are in conflict upon that point, and this case does not require its answer. It is certain such an Act would run counter to the long-established legislative policy of the State.

It may be that some property in this outlying district should, in justice, pay taxes at the city proper rate. This would support a plea that such property should be included within the limits of the city proper. It would not support a plea that all property in the outlying district, including farm and waste land, should be taxed at this rate.

We have sufficiently answered the argument of the city attorney that, if § 5 is held to impose a general limitation upon the entire taxing power of the city to the meeting of the town burdens and expenses, the municipality will be unable to maintain its government.

The amendment bears upon its face indications of

haste and crudeness. Whatever the framers intended they have not, as we think a study of the legislation shows, succeeded in changing the burdens and expenses for which, and for which only, the inhabitants and property of the entire city were liable to taxation under the Consolidation Act and the several revisions of the charter.

The decision of this demurrer does not require, but we think the municipal exigency does require, that we advise that under the charter of 1907, as amended in 1913, taxes should be levied upon the grand list of the city proper, or second district as it was before the amendment, to defray its burdens and expenses, and upon the entire city, or first district as it was before the amendment, to defray the burdens and expenses as specified in § 4 of the charter. In short, the method of levying taxes theretofore adopted should be continued.

There is error, the judgment is set aside and the cause remanded for further proceedings according to law.

In this opinion the other judges concurred, except BEACH, J., who dissented.