WILLIAM F. CONNELLY vs. THE CITY OF BRIDGEPORT.

LAWRENCE J. GILL vs. THE CITY OF BRIDGEPORT.

Third Judicial District, New Haven, January Term, 1926.
WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, JS.

In construing a statute, the function of the courts is to ascertain and, where possible, to effectuate the intent of the General Assembly. With the wisdom or unwisdom of the legislation in question they have nothing to do.

The towns and cities of this State have no inherent right of self-government. They possess only such powers as the General Assembly has, by express grant or by necessary implication, conferred upon them, and these powers are subject to such change or modification as the legislature may at any time see fit to make.

A later statute, which aims to cover the whole subject to which it relates and to be exclusive, must be regarded as the latest expression of the legislative intent and as intended to repeal by implication all prior enactments which, by their repugnancy or inconsistency, stand in the way of its full and effective operation; and this rule applies not only to earlier provisions which are repugnant or inconsistent on their face, but to any others which upon examination and analysis are found to hamper or interfere with the workability of the later statute.

By the Special Laws of 1925, the General Assembly recast and reorganized, in a most thorough and detailed manner, the entire existing machinery for the assessment and collection of taxes in the city of Bridgeport, providing, in part, that a board of apportionment and taxation, to be named by the Governor, should appoint a tax assessor at a salary of $7,500 per annum and that the assessor might employ an assistant at a salary to be approved and ratified by the board. The board appointed the plaintiff C to be the tax assessor, and C designated the plaintiff G to be his assistant at a salary of $3,500 per annum, which was approved by the board. Shortly after these plaintiffs had commenced the performance of their duties, the common council of the city passed certain resolutions in which the salary of C, the tax assessor, was declared to be $3,500 per annum and the salary of G, his assistant, to be $3,000 per annum; and thereafter the city refused to pay the plaintiffs a higher rate of compensation than that fixed by these resolutions. In the present action by the plain-

Connelly v. Bridgeport.

tiffs to recover their salaries at the rates established by or in accordance with the Act of 1925, the city maintained that the action of the common council was authorized by an Act of 1917 (17 Special Laws, p. 840, § 3) which empowered it "to determine and change the salaries of all officers, elective or appointive under the charter"; and that the power so conferred upon the common council was not affected, as far as the plaintiffs' salaries were concerned, by a subsequent amendment of 1923 (19 Special Laws, p. 36) which forbade the common council "to reduce the rank or salary of any officer in said city," since this provision should be construed to apply only to offices created by ordinance and existing at the time of its enactment. *Held:*

1. That the amendment of 1923 could not be limited by the narrow construction urged by the city, since its purpose clearly was to take away from the common council the power granted by the Act of 1917; and that, therefore, the resolutions reducing the plaintiffs' salaries were unauthorized by any provision, express or implied, of the city's charter and were invalid.

2. That even if the Act of 1917 had not been repealed *in toto* by the amendment of 1923, the same result would follow in so far as the power of the common council to reduce the plaintiffs' salaries was concerned, since the existence of such a power, necessarily carrying with it the power to make such reductions as would in effect destroy the offices created by the Act of 1925, would be repugnant to and inconsistent with the provisions of the later Act and would enable the common council to nullify the obvious purpose of the legislature to establish and maintain a new system of taxation in the city.

Argued January 21st—decided February 23d, 1926.

ACTIONS to recover compensation alleged to be due the plaintiffs as officials of the defendant city of Bridgeport, brought to the Court of Common Pleas for Fairfield County and reserved by the court (*Huxford, J.*), upon an agreed statement of facts, for the advice of this court.

*Thomas M. Cullinan,* for the plaintiffs.

*Alexander L. DeLaney,* for the defendant.

HAINES, J. These actions, brought separately, rest upon the same basis and require the consideration of

essentially the same questions. At the request of the
parties they were reserved, and by agreement of coun-
sel argued together, and will be so considered in this
opinion.

The charter of the city of Bridgeport as revised and
amended to September 1st, 1917, provides that there
shall be in the city of Bridgeport a tax commissioner,
who shall have all the powers and duties exercised by
boards of assessors, and shall have authority to appoint
a deputy commissioner and a chief clerk, etc. It also
provides that there shall be a board of apportionment
and taxation.

In 1917 (17 Special Laws, p. 840, § 3), the General
Assembly enacted the following provision: "The com-
mon council of the city of Bridgeport, by ordinance,
shall have the power and authority to determine and
change the salaries or other compensation of all offi-
cials elective or appointive under the charter of the
city of Bridgeport." This Act, unless repealed by the
Act of 1923, subsequently referred to, was in force at
the time of the passage of the Act of 1925 in question.
There was also in force at this time, unless repealed by
the Act of 1923, § 53 of the charter, which provided
that the common council shall have the power to make
orders and ordinances "relative to the salaries and com-
pensation of all officers of said city, and the duties of
such officers, not expressly defined by the provisions
of this Act."

Prior to this enactment, the salaries of the mayor,
city attorney, director of public works, city clerk, tax
collector, etc., were fixed by charter provision and
could not be reduced or increased by action of the
common council. In the same Special Act of 1917
(17 Special Laws, p. 839), the General Assembly abol-
ished the board of assessors and substituted in their
stead an officer designated "tax commissioner," whose

Connelly *v.* Bridgeport.

salary, together with those of his deputy commissioners, clerks, etc., were fixed in the Act. Prior to this Act the board of assessors, and subsequent to the Act, the tax commissioner, were appointed by the mayor. By the charter revision of 1907, a board of apportionment and taxation was constituted, whose duty it was to fix the municipal budget and the tax rate to provide the necessary funds for municipal purposes. In 1923, the General Assembly enacted the following (19 Special Laws, p. 36): "An Act Amending the Charter of the City of Bridgeport. . . . The common council of the city of Bridgeport shall not abolish any existing office or reduce the rank or salary of any officer in said city, provided in the event any vacancy occurs in any office the common council may abolish such office or reduce the salary provided for the officer occupying any such office, and also provided any officer may be removed for cause subject to the provisions of the charter."

In 1925 (19 Special Laws, p. 807) the General Assembly, by an Act approved June 1st, 1925, entitled "An Act Amending the Charter of the City of Bridgeport, Concerning the Assessment and Collection of Taxes," enacted the provisions which have given rise to the questions under consideration in these actions. A copy of this Act appears in the footnote. By this

---

AN ACT AMENDING THE CHARTER OF THE CITY OF BRIDGEPORT, CONCERNING
THE ASSESSMENT AND COLLECTION OF TAXES

Be it enacted by the Senate and House of Representatives in General Assembly convened:

Section 1. There shall continue to be a board of apportionment and taxation in the city of Bridgeport. On or before July 1, 1925, the governor shall appoint seven members of said board to serve from the date of their respective appointments as follows: two to serve until January 1, 1928; two until January 1, 1930; and three until January 1, 1932. In December prior to the expiration of the term of any member so appointed, the mayor shall appoint his successor to serve for a period of six years from the first day of

Act (§ 1) it was provided that there should continue to be a board of apportionment and taxation; that on or before July 1st, 1925, the Governor should appoint seven members of this board, two to serve until Jan-

January following the date of appointment. Any vacancy occurring in the membership of said board other than at the expiration of a term of office and prior to January 1, 1932, shall be filled by selection by the remaining members of said board for the unexpired portion of the term of the member whose place is to be filled. After said date, each vacancy shall be filled for the unexpired portion of any term by appointment of the mayor of said city. No person shall be eligible for membership on said board who is not a citizen of the city of Bridgeport. Said board shall perform all the duties imposed by law upon the board of apportionment and taxation as constituted at the time of the passage of this act and such other duties as are imposed by the provisions hereof. Within fifteen days of the date of the appointment of the members of said board as provided herein, it shall meet in the usual place of meeting of the board of apportionment and taxation in said city and shall choose from its membership a president and a vice president. The president, and in his absence the vice president, shall preside at all meetings of said board. The members of said board shall serve without compensation. The clerk of said board shall submit to the city auditor, annually, for his records, within the time prescribed by law in each year, an estimate of the amount of money required by said board for the fiscal year next ensuing, giving details, as far as practicable, to cover salaries and compensation of the appointees of said board and of clerical and stenographic assistants, together with all necessary expenses incident to the carrying out of the provisions of this act, and the city auditor shall recommend appropriations to cover the estimate of expenses of said board in the same manner as in the case of other boards of said city. Appropriations shall be made by the board of apportionment and taxation to cover expenses to meet its requirements and the requirements of its several appointees and for compensation for necessary assistance for year next ensuing. The city clerk shall issue his order on the treasurer of the city of Bridgeport in payment of all such expenses, including expenses for salaries and compensation incurred pursuant to the provisions of this act, but all such bills shall be approved by the clerk of said board or other person whom the board of apportionment and taxation may designate for such purpose.

Sec. 2. On or before July 1, 1925, said board of apportionment and taxation shall appoint a tax attorney, an assessor and a collector of taxes, each to serve for a term of six years from the date of his

uary 1st, 1928, two until January 1st, 1930, and three until January 1st, 1932. It was also provided: "In December prior to the expiration of the term of any member so appointed, the mayor shall appoint his suc-

appointment and to receive a salary of seventy-five hundred dollars per annum, payable in equal semi-monthly instalments; but any such appointee may be removed from office for cause by the Superior Court on application to said court of at least two members of the board of apportionment and taxation. Payment of compensation to any appointee against whom charges shall have been preferred shall be deterred until the finding thereon shall be made by said court. If an order of removal shall be issued based on charges so made, compensation shall be paid for the services rendered, if any, by such appointee between the date of such application and the date of the order of removal within the discretion of the court. In case of a vacancy in the office of tax attorney, assessor or collector of taxes or in case of absence of any appointee to any such office, said board of apportionment and taxation shall fill such vacancy by appointment for the unexpired portion of the term of the original appointee. At the expiration of the term of office of the tax attorney, the assessor or the collector of taxes, his successor shall be appointed for a like term by said board.

Sec. 3. On or before August 1, 1925, the board of apportionment and taxation shall select a clerk who shall serve for a term of six years from the date of his appointment. In case of a vacancy in the office of clerk or in case of the absence of such clerk, said board shall fill such vacancy by appointment for the unexpired portion of the term of the original appointee or until he shall resume his duties, as the case may be. At the expiration of the term of office of such clerk, his successor shall be appointed for a like term by said board. Such clerk shall accurately record the doings of said board and shall be the custodian of all its books, papers and data relating to the conduct of its business, and shall perform such other duties in connection with the assessment and collection of taxes as may be required.

Sec. 4. On or before July 15, 1925, the mayor shall appoint three members of the board of apportionment and taxation, who shall thereupon be a board of contract and supply; one of said members shall be appointed to serve until January 1, 1926; one until January 1, 1927; and one until January 1, 1928; and, during the first week in January, 1926, and annually thereafter, the mayor shall appoint a member of said board of contract and supply from the members of said board of apportionment and taxation to serve for three years from the first day of January on which the term of his predecessor

cessor to serve for a period of six years from the first day of January following the date of appointment. . . . Said board shall perform all the duties imposed by law upon the board of apportionment and taxation

shall have expired. Any vacancy in said board of contract and supply shall be filled for the unexpired portion of the term in the same manner as the original appointment was made. Any member of said board of contract and supply, irrespective of the term for which he shall have been appointed, who shall cease to be a member of the board of apportionment and taxation, shall thereupon, *ipso facto,* cease to be a member of said board of contract and supply. On or before September 1, 1925, the board of contract and supply shall appoint a clerk who shall serve until April 1, 1926, and in the month of March, 1926, and annually thereafter, the board of contract and supply shall appoint a clerk who shall serve for the term of one year from the first day of April following such appointment. The salary of such clerk shall be three thousand dollars per annum, payable in semi-monthly instalments.

Sec. 5. The tax attorney shall be an attorney at law of this state and a resident of the city of Bridgeport. He shall be the legal adviser of the city in all matters pertaining to the assessment and the collection of the ad valorem tax and shall represent the city in all civil actions pertaining thereto in which the city may be made a party. When requested in writing by any proper authority, he shall give his written opinion pertaining to the assessment and collection of taxes, foreclosures of tax liens, abatement of taxes by the common council and the correction of errors in assessments, and he shall perform all the duties imposed by law on the city attorney by the charter of the city of Bridgeport and the general statutes pertaining to the assessment and collection of such taxes, provided the duties of the city attorney relating to licenses, license taxes and the assessment of benefits and damages and betterments shall be unchanged by the provisions of this act.

Sec. 6. Any taxpayer having no other remedy at law and the valuation of whose property is purported to have been affected by a certificate of error granted or issued prior to the expiration of the time within which he might have taken an appeal from the action of the board of relief to the superior court, or any taxpayer whose appeal to said superior court from the board of relief was pending and whose claim of grievance was adjusted or compromised by the common council on recommendation of the city attorney, which adjustment or compromise involved any claim of the city for taxes with interest thereon or penalty for failure to list or include property in his list, which tax was assessed as of September first in any year

as constituted at the time of the passage of this act
and such other duties as are imposed by the provisions
hereof. . . . [§ 2] On or before July 1, 1925, said board
of apportionment and taxation shall appoint a tax

other than that mentioned in his appeal from the board of relief,
may apply to the superior court for redress, showing that it would
be inequitable for the city to collect all taxes for which such taxpayer
is liable. The court in each such case shall cite the tax attorney to
be heard in reference thereto and may issue its order permitting such
taxpayer to file a complaint showing grievance against said city of
Bridgeport. Thereupon each such cause in relation to which such
certificate was issued or in relation to which such appeal was taken
shall proceed in the manner of appeals to said court from the board
of relief. The court may grant relief as provided in section 1243 of
the general statutes, and appeal may be had from the judgment of
said court to the supreme court of errors, as provided by law for
appeals to said supreme court of errors. In any case in which the tax
commissioner or assessors shall have issued a certificate of error,
whether within the time limited for taking an appeal to the superior
court or otherwise, purporting to reduce the value of any property,
or in case of any action by the common council purporting to have
abated any tax, if it shall appear that the valuation on which such
tax was laid was manifestly excessive and could not have been
arrived at except by disregarding the provisions of the general
statutes for determining the valuation of such property, the tax
attorney may, on finding such facts, report the same to the board
of apportionment and taxation with his recommendations thereon.
Said board may reduce the amount of the tax of the taxpayer whose
property was so excessively valued to such an amount, not exceeding
the purported reduction effected through such certificate of error or
abatement, as would be payable had such property been assessed
according to law, and the remainder, if any, with interest thereon,
shall be collected. Any claim of the city or interest thereon or
penalty appearing to be due to the city on any rate bill which, on
investigation, the tax attorney shall ascertain to be uncollectible
shall be reported by him to the board of apportionment and taxation,
and said board, on recommendation of said attorney, may pass an
order nullifying the same and expunging it from the records of the
collector. The action of said board thereon shall be final. Said at-
torney shall inquire into the facts in support of which valuations
were purported to have been reduced by so-called "certificates of
error" other than those previously mentioned in this section and into
the facts relating to all abatements and compromises or adjustments
of claims of the city for taxes or interest thereon or penalty made by

attorney, an assessor and a collector of taxes, each to serve for a term of six years from the date of his appointment and to receive a salary of seventy-five hundred dollars per annum, payable in equal semi-monthly

the common council on recommendations of the city attorney or otherwise, and in each such case he shall report thereon to the collector of taxes showing whether such claim is collectible or uncollectible. The collector shall proceed to collect all such claims as designated by said attorney as collectible. The tax attorney shall collect all amounts due to the city secured by liens which have been filed for a period of more than three years.

Sec. 7. The city attorney of Bridgeport and his assistant in office at the time of the passage of this act shall deliver to the tax attorney, on demand, all files, papers and memoranda in their possession pertaining to cases on appeal in the superior court or cases pending in court to collect taxes due to the city.

Sec. 8. The tax assessor shall have all the powers and shall perform all the duties imposed on assessors in towns of this state, together with such other duties as are imposed by the charter of the city of Bridgeport. On request of the board of apportionment and taxation, he shall report in writing concerning any matter pertaining to the duties of his office. The board of apportionment and taxation, by itself or by a committee of not more than fifteen citizens of Bridgeport, which it may appoint for said purpose, shall install a system by which equitable and just values of land and buildings within the city may be ascertained. Such system so installed shall provide, among other things, for the collection of data relating to each parcel of land and to each building within the city and for the arrangement of such data in convenient and practical form for use of the assessor, showing unit foot values of land and either square foot or cubic foot unit values for the several classes of buildings within the city. Tax maps and land maps shall be provided for recording separately the value of each such parcel. The tax maps shall show the dimensions of each separately assessed parcel of land and the land value maps shall show the value per front foot according to a standard unit of depth of all land abutting on any street, public way or place of the city; but, as to acreage tracts, if it shall be determined that any land in said city should be valued by a unit value per acre, the maps thereof shall show the acreage unit value applicable to each such parcel. The board of apportionment and taxation may enter into a contract for the installation of such system as the interests of said city may require.

Sec. 9. The tax collector shall perform all the duties and shall have all the powers prescribed by the general statutes and by the

instalments; but any such appointee may be removed from office for cause by the Superior Court on application to said court of at least two members of the board of apportionment and taxation. . . . [§ 12] The tax

charter of the city of Bridgeport. He shall present annually, and at such other times as the board of apportionment and taxation may require, a list of all such amounts which shall have remained unpaid on the rate bill for a period of nine months after the same shall have become due, together with the name and address of each delinquent taxpayer, with the amount of the tax and, separately, of interest and other charges thereon due. He shall give bond to the city in the amount of not more than two hundred thousand dollars, and said board may require other persons employed by the collector who handle the funds of the city to give bond in like manner in such amount as said board may determine. Each such bond shall be conditioned on the faithful performance of the duties of the official or employee for which it shall have been given. The premiums on such bonds shall be paid by the city. The assessor and the collector of taxes shall make such rules and regulations for the conduct of their respective offices as may be approved by the board of apportionment and taxation. The town clerk shall file with the assessor, daily, a complete abstract of all deeds and conveyances of land or personal property or of certificates of intention to transfer personal property placed in his custody for record during the day preceding.

Sec. 10. The city of Bridgeport shall furnish to the assessor and to the collector of taxes suitable offices for the conduct of the business imposed on them respectively by the provisions of this act, but no intercommunicating doorway or passageway shall be maintained between the space occupied by the collector and that occupied by the assessor. In case suitable office accommodations may not be had in the city hall, the board of apportionment and taxation may provide for suitable accommodations for either the assessor or the collector or both, and for this purpose it may lease, for a term of years or otherwise, such accommodations as may be necessary and advisable for the conduct of their respective offices.

Sec. 11. The collector of taxes, the clerk of the board of apportionment and taxation and one other citizen of said city to be appointed by said board of apportionment and taxation during the month of September annually, shall constitute a board of relief for the city of Bridgeport. The person so appointed shall serve for a period of one year from the date of his appointment. He shall be the chairman of the board of relief. The board of relief so constituted shall possess all the powers and shall annually perform all the duties in and for the city imposed by law on the board of relief as

attorney, the assessor, the collector of taxes, the clerk of the board of apportionment and taxation, the board of relief and the board of contract and supply may appoint such assistants, legal, clerical and stenographic, as may be necessary for the conduct of the work imposed respectively on them by the provisions

constituted at the time of the passage of this act. Said board shall keep a record of its doings and shall, on request, report in writing to the board of apportionment and taxation respecting the performance of its duties.

Sec. 12. The tax attorney, the assessor, the collector of taxes, the clerk of the board of apportionment and taxation, the board of relief and the board of contract and supply may appoint such assistants, legal, clerical and stenographic, as may be necessary for the conduct of the work imposed respectively on them by the provisions hereof, but the appointment of any person whose annual compensation shall exceed twelve hundred dollars shall be subject to the approval of the board of apportionment and taxation. The salary of the clerk of the board of apportionment and taxation shall not exceed five thousand dollars per annum and the salary of the chairman of the board of relief shall not exceed two thousand dollars per annum, the amount in each case to be determined by the board of apportionment and taxation. Such compensation shall be in lieu of all other compensation, charges and commissions for services rendered by them respectively in the performance of their duties. Such salaries and the compensation of clerks and employees authorized to be appointed by the provisions hereof shall be paid in equal semimonthly instalments in the same manner as is prescribed by law for the payment of compensation of other officers and employees of said city.

Sec. 13. The terms of office of the members of the board of apportionment and taxation, including its ex officio members, of the tax assessors, of the tax collector and his assistant, of the members of the board of relief, of the members of the board of contract and supply and of the clerk of the board of apportionment and taxation in office at the time when their successors shall be appointed as provided in this act shall terminate, and all provisions of the charter of the city of Bridgeport and amendments thereto or ordinances of the city of Bridgeport or amendments thereto which are inconsistent with the provisions of this act are repealed and no provision of the general statutes inconsistent with any provision of this act shall apply to the city of Bridgeport.

Approved June 1, 1925.

hereof, but the appointment of any person whose annual compensation shall exceed twelve hundred dollars shall be subject to the approval of the board of apportionment and taxation."

The foregoing citations are sufficient to show that by the Act of 1925, the General Assembly sought to effect a radical and complete change in the then-existing method of levying, assessing, and collecting taxes, and making appropriations in the city of Bridgeport; of selecting the necessary public officials for this work; and in providing for their compensation. This conclusion is emphasized by the closing clause of the Act:

"All provisions of the charter of the city of Bridgeport and amendments thereto or ordinances of the city of Bridgeport or amendments thereto which are inconsistent with the provisions of this Act are repealed and no provision of the General Statutes inconsistent with any provisions of this Act shall apply to the city of Bridgeport."

With the wisdom or unwisdom of this legislation, this court has, of course, nothing to do. It is our function to interpret the legislative will, not to question its exercise. We are to construe the Act with definite regard to the existing legislation on the same subject. *Chamberlain* v. *Bridgeport,* 88 Conn. 480, 490, 91 Atl. 380. If possible also we are to so interpret its terms that when that will is ascertained, it shall become legally operative and effective. It follows that arguments and considerations addressed to these matters of legal interpretation and construction, are the only ones to which we can listen. *State ex rel. Lewis* v. *Turney,* 97 Conn. 496, 504, 117 Atl. 499.

Our first concern is the ascertainment of the legislative intent in the Act of 1925—not, what did it mean to say, but what is the meaning of what it did say.

*Chamberlain* v. *Bridgeport,* 88 Conn. 480, 490, 91 Atl. 380; *State* v. *Faatz,* 83 Conn. 300, 305, 76 Atl. 295; *Walsh* v. *Bridgeport,* 88 Conn. 528, 534, 91 Atl. 969; *Bissell* v. *Beckwith,* 32 Conn. 509, 516.

An examination of its provisions at once discloses a purpose to remove from the control of the local authorities and the people of Bridgeport, the entire machinery then existing for the levy and collection of taxes and appropriations thereunder. Practically every feature of the charter and ordinances touching this branch of city business, is rewritten and radically changed to the minutest detail.

The membership of the board of taxation and apportionment is changed from twelve to seven, and the selection of the new members is to be by the Governor of the State and not by local authority as theretofore, and no appointment to the board can be made by the mayor prior to January 1st, 1928. This board appoints a tax attorney, an assessor, and a tax collector, each with a fixed salary of $7,500 per year, and these are to assume the duties of the former officials in connection with this feature of the city's affairs. The method of their selection and that of their subordinates, their respective duties and their method of performing them, and many other requirements, are prescribed with a particularity that leaves no doubt of the intent to make a complete change and put the new method in the place of the old in all its details. The obvious aim is to bring the exclusive management of taxation in Bridgeport under the provisions of this Act, and divest the existing local authorities of control.

The Act became operative July 1st, 1925, and on July 6th, 1925, the common council of the city of Bridgeport passed an ordinance, basing it upon claimed authority under § 35 of the charter, which ordinance reads as follows:

"Section 1.   The salary of the tax assessor shall be at the rate of thirty-five hundred dollars per annum; the salary of the assistant or deputy tax assessor shall be at the rate of three thousand dollars per annum; the salary of the chief clerk shall be at the rate of twenty-five hundred dollars per annum; the salary of the clerk of block maps shall be at the rate of two thousand dollars per annum; the salary of the engineer shall be at the rate of two thousand dollars per annum; the salary of the transfer clerk shall be at the rate of sixteen hundred dollars per annum.

"Sec. 2.   All other assistants, deputies, clerks or employees in the office of the tax assessor shall be at the rate of twelve hundred dollars per annum.

"Sec. 3.   This ordinance shall take effect upon its passage and approval and all ordinances or parts of ordinances inconsistent herewith are hereby repealed."

In accordance with the provisions of § 2 of the Act of 1925, previously recited, the board of apportionment and taxation appointed the plaintiff Connelly to be the assessor, to hold office for the term of six years from July 1st, 1925, and, on the last-named date, the assessor, Connelly, as authorized by the Act, appointed the plaintiff Gill as assistant to the assessor from and after that date, at a salary of $3,500 per annum, which latter appointment and the salary were approved and ratified by said board.   Both the above-named appointees entered upon and have performed the duties of their offices.

The plaintiffs claim that on August 16th, 1925, there was due to them by the provisions of the Act under which they were appointed, $937.50 and $438.75 respectively.   The defendant, claiming to act by authority of the ordinance of July 6th, 1925, paid them $397.16 and $200 respectively, and refused to pay the

balance. These actions are brought to recover those sums.

There is no dispute between the parties as to the validity of the appointment of these officials, nor as to services rendered by them thereafter, and it is agreed that the acceptance by them of a part only of the sum claimed shall not be held to operate in any way as an estoppel to prevent the recovery of the balance if they are lawfully entitled to it under the Act of 1925.

There are, as will be seen, two classes of appointees under this Act; that of the plaintiff Connelly is of the first class, where the salaries are definitely fixed by the Act, and that of the plaintiff Gill is of the second class, where the salaries are fixed by a superior officer—in this instance by the assessor, with the approval of the board of apportionment and taxation; but as to both, a construction of the legislative Act of 1925 is necessary.

As between the charter and the ordinances of the defendant city and the later Act of the legislature, the paramount authority of the latter is unquestioned. The right of self-government by charter and ordinances is itself a legislative grant and is held by the city at the will of the legislature and subject to such change or modification as the latter may at any time see fit to make. Towns and cities under our form of government in Connecticut, have no inherent right of self-government, and no powers save such as are granted to them by the legislature, expressly or by necessary implication, subject, of course, to constitutional limitations. No constitutional question arises in the present inquiry. *Webster* v. *Harwinton*, 32 Conn. 131, 137, 139; *Booth* v. *Woodbury*, 32 Conn. 118, 126; *State ex rel. Bulkeley* v. *Williams*, 68 Conn. 131, 140, 149, 35 Atl. 24, 421; *Johnston* v. *Allis*, 71 Conn. 207, 217, 41 Atl. 816; *Chamberlain* v. *Bridge-*

*port,* 88 Conn. 480, 490, 91 Atl. 380; *Water Commissioners* v. *Manchester,* 89 Conn. 671, 677, 96 Atl. 182; *Donnelly* v. *New Haven,* 95 Conn. 647, 654, 111 Atl. 897; *Waterbury* v. *Macken,* 100 Conn. 407, 411, 124 Atl. 5.

In *State ex rel. Southey* v. *Lashar,* 71 Conn. 540, 546, 42 Atl. 636, we said: "The city [Bridgeport] can do no act nor elect any officer unless it is authorized to do so by its charter. If the charter points out a particular way in which any act is to be done or in which an officer is to be elected, then, unless these forms are pursued in the doing of the act or in the electing of the officer, the act or the election is not lawful. In all such cases the form of the appointment is essential to its validity. *Forma dat esse rei.*"

Some of the provisions of the charter and ordinances which we have cited, are clearly inconsistent with the provisions of the Act of 1925. The latter must therefore control to that extent, and the former are repealed by the express terms of the last section of the Act, to which we have referred. Under the established rules of statutory construction, this result would follow inevitably, were there no such repealing clause, for the Act, as we have seen, aims to cover the whole field and to be exclusive, and it is the last expression of the legislative will. So far as pre-existing provisions, by their repugnancy or inconsistency, stand in the way of the full and effective operation of the final expressed will of the legislature, they stand, in law, as *pro tanto* repealed. Not only is this true of those provisions which are on their face inconsistent with the Act, but of any others which upon examination and analysis are found to hamper or interfere with its workability. *Hartford* v. *Hartford Theological Seminary,* 66 Conn. 475, 484, 34 Atl. 483; *State ex rel. Reiley* v. *Chatfield,* 71 Conn. 104, 112, 40 Atl. 922;

*Walsh* v. *Bridgeport,* 88 Conn. 528, 535, 91 Atl. 969; *Tracy* v. *Tuffly,* 134 U. S. 206, 223, 10 Sup. Ct. 527; *Cook County Nat. Bank* v. *United States,* 107 U. S. 445, 451, 2 Sup. Ct. 561; *United States* v. *Tynen,* 78 U. S. (11 Wall.) 88, 95; *Bartlet* v. *King,* 12 Mass. 536, 545; *Farr* v. *Brackett,* 30 Vt. 344, 346; *Vroom* v. *Board of Education,* 79 N. J. L. 46, 47, 74 Atl. 262; *Clark* v. *Edgar,* 84 N. J. L. 333, 336, 86 Atl. 389; *People ex rel. Cant* v. *Crossley,* 261 Ill. 78, 89, 103 N. E. 537; *Stiers* v. *Mundy,* 174 Ind. 651, 656, 92 N. E. 374; *Hall* v. *Stewart,* 135 Va. 384, 391, 116 S. E. 469; *State* v. *Lamar,* 178 Ala. 77, 59 So. 737, 739; *Harris* v. *Cooley,* 171 Cal. 144, 147, 152 Pac. 300; *Glassell Development Co.* v. *Citizens Nat. Bank,* 191 Cal. 375, 216 Pac. 1012, 1016; *Madison* v. *Southern Wisconsin Ry. Co.,* 156 Wis. 352, 359, 146 N. W. 492.

These principles are basic, universally recognized, and clearly enunciated in a long line of decisions in many jurisdictions, and they doubtless have the full concurrence of counsel for the defendant. To sustain his position that the common council retains control of salaries fixed by the Act of 1925, it becomes necessary to hold that this is not one of those provisions which is repugnant or inconsistent, and so is not within the purview of the rule. He says that the ordinance passed by the common council July 6th, 1925, was authorized by that portion of § 35 of the charter which was added by the amendment of 1917, viz.: "The common council of the city of Bridgeport, by ordinance, shall have the power and authority to determine and change the salaries or other compensation of all officials elective or appointive under the charter of the city of Bridgeport." This amendment, as we have seen, was followed by that of 1923, which reads: "The common council of the city of Bridgeport shall not abolish any existing office or reduce the rank or salary

of any officer in said city, provided in the event any vacancy occurs in any office the common council may abolish such office or reduce the salary provided for the officer occupying any such office, and also provided any officer may be removed for cause subject to the provisions of the charter."

Counsel contends that this latter amendment should be construed to refer only to such offices as existed at the time the amendment was passed; that since the authority given to cities in this State by General Statutes, § 388, to amend their own charters and thus change the compensation of their officials, was repealed by the further Act of the legislature in 1923 (Public Acts, Chap. 284, §§ 1-3), the city had no right after that date to abolish any office or change the salaries of officials fixed by charter, and the amendment of 1923 which we are considering should be construed to refer only to those offices which are within the control of the common council, viz.: those created by ordinance.

We are unable to see the force of this argument. The amendment is in clear and unequivocal language. The common council is forbidden to abolish "any existing office" or to reduce the salary "of any officer in said city." Its meaning cannot be rendered doubtful, or its application narrowed, by any legitimate method of construction. It emanates from the same authority as the amendment of 1917. Not only does the latter have no superior force or effect, but both became a portion of the organic law governing the city of Bridgeport, and so far as they are in conflict, the last must of course govern and override the first. It follows that, so far at least as the matter of changing or reducing salaries is concerned, the authority to do so which was granted to the common council in 1917 was taken away in 1923.

This conclusion leaves nothing for the ordinance of

July 6th, 1925, to rest upon, and it is without sanction, express or implied, in any grant by the legislature, by special or public Act.

But even if the amendment of 1917 could be held operative to permit the reduction of salaries of its officials by the common council, generally, it would not follow that it could apply to the legislative Act of 1925. The reason for this is that not only does the latter repeal in terms all existing inconsistent or repugnant provisions, and the rules of statutory construction do the same, but it would concede the right of the common council to render nugatory the legislative Act. It is undeniable that if the common council were to have authority by ordinance to reduce salaries specifically provided by the legislative Act of 1925, it would be in a position to nullify the entire purpose of the latter. This is now a charter provision of the city of Bridgeport, and the law requires that it be so construed, if possible, as reasonably to promote its ultimate purpose. *Donnelly* v. *New Haven,* 95 Conn. 647, 667, 111 Atl. 897.

"The power to tax is the power to destroy," and this is equally true of the power to reduce salaries. If the common council had that power, it would be simple to make such reductions in the salaries of the officials who are charged with the carrying out of the purposes of the legislative Act that the entire legislation would fail of its object. It does not change the legal effect of this to say, as do counsel, that it is not to be assumed that the common council of the city of Bridgeport would in fact thus jeopardize the sound operation of its taxing system. While this is doubtless true, the argument has no legal force. Moreover, if the common council has that power to nullify the purpose of the legislation in the Act of 1925, it is because the legislature granted it, either expressly or impliedly, in

the Act itself, or allowed it to remain with the common council under a previous grant. We can find nothing of that character in either place, and it results that the ordinance of July 6th, 1925, must be held invalid and of no effect, so far at least as it relates to the salaries of the assessor and his assistant, the plaintiffs in these actions.

To the five questions propounded to us in each case, we answer the first and second, "Yes"; the third and fourth, "No"; and the fifth, for the plaintiff Connelly $937.50, and for the plaintiff Gill $437.50, being one and one-half months at $7,500 and $3,500 per annum, respectively.

In this opinion the other judges concurred.

