THE NEW HAVEN WATER COMPANY *v.* CITY OF NEW HAVEN ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued October 10—decided December 21, 1944.

*A. Frederick Mignone*, with whom was *Vincent P. Dooley*, for the appellant-appellee (defendant city of New Haven).

*Samuel A. Persky* and *Henry H. Townshend*, with whom was *Serafino Ginnetti*, for the appellee (defendant The Fairmount Association).

*Morris Tyler*, with whom was *Crenna Sellers*, for the appellant-appellee (plaintiff).

ELLS, J.   The plaintiff furnished water for fire protection in the thirty-second ward of the city of New Haven for which it has not been paid.   The Fairmount

Association is a municipal corporation with limited powers and obligations functioning within the territorial limits of the present thirty-second ward, which is the former fifteenth ward of the city. The plaintiff brought this action for a declaratory judgment determining whether the city or the association is indebted to it for the water, and for damages. Judgment was entered declaring that the city is liable for the water furnished and to be furnished for fire protection within the territorial limits of the Fairmount Association, and that the Fairmount Association is not liable therefor. It was further adjudged that the plaintiff recover of the city the amount of the water bill, with interest from the date of the judgment. The defendant city and the plaintiff have appealed, the plaintiff's appeal being limited to the claim that the court erred because it did not include interest from the dates of the bills found to be due.

The claim against the city is based on a contract which it made with the plaintiff in 1902. The city contends that so much of the contract as provided for furnishing water to the ward in question, which was not within the full jurisdiction of the city, was ultra vires. The claim against the Fairmount Association is based on the allegations that it is authorized to provide for protection from fire within its territory and to contract and pay for fire protection, and that it used the water for this purpose. The Fairmount Association denied these allegations and by cross-complaint sought an adjudication that the city and not the association is liable for the water charges.

In February, 1902, the plaintiff and the city entered into a written contract which, in substance, provided that the plaintiff was to furnish water to the city for municipal purposes "wheresoever the mains of said Company now are or may hereafter be extended within

the present limits of the City and within any future limits thereof, including water for school and fire protection purposes, whenever ordered by the City to do so, in the Thirteenth, Fourteenth and Fifteenth wards, for all time after the twentieth day of February, A.D. 1902, or until the termination of this contract in accordance with the provisions thereof, without cost or charge," in consideration that the city save the water company harmless from certain taxes, or in lieu thereof pay for the water on a prescribed basis. It is apparent that the parties to the contract had some doubt as to the power of one or both to enter into the agreement, for it was provided therein that "said City and said Company will unite in an application to the General Assembly, at its next session, for the passage of an act making the terms of this contract obligatory upon both parties as though specifically authorized in their respective charters."

In April, 1902, in accordance with the terms of the contract, the city "ordered and required" the water company to furnish a full and adequate supply of water for fire protection and school purposes in the thirteenth, fourteenth and fifteenth wards "in accordance with the provisions of paragraph First of the contract recently entered into between the City of New Haven and the New Haven Water Company." As provided in the agreement, the plaintiff and the city joined in an application to the 1903 General Assembly as a result of which an act was passed whereby the contract of February, 1902, was made in effect an amendment to the respective charters of the two corporations and became by legislative enactment obligatory on each. 14 Spec. Laws 276; *New Haven Water Co.* v. *New Haven,* 106 Conn, 562, 572, 139 Atl. 99. In May, 1932, the public utilities commission ordered the city to pay a rate higher than that speci-

fied in the contract for the water purchased from the company for municipal purposes including fire protection. The city continued to purchase water under the 1902 contract, paying therefor in full at the new rate until January 1, 1940. From that period up to and including June 30, 1943, the plaintiff supplied and stood by to supply water to the territory within the boundaries of the Fairmount Association. It is the bill for water thus furnished that the city now refuses to pay. It admits that the water was used for fire protection in its thirty-second ward; it does not dispute the rate on which the bill is computed or the amount of the bill.

The city's basic claim is that the contract is void in part because the city had no power to provide for furnishing water to the wards in question. In order to determine whether this was so at the time the agreement was executed an exhaustive statement would have to be made concerning the statutory powers and limitations binding it in 1902 when it entered into the contract. If the legislative act of 1903, passed for the purpose of dispelling this uncertainty, did in fact effectuate its purpose and make the contract valid and binding upon both parties, the question whether it was ultra vires when made becomes academic.

The city cites numerous cases which hold that it could not ratify and make valid an act done without the scope of its corporate authority. The ratification and validation were acts of the legislature, not the city. In *New Haven Water Co.* v. *New Haven,* supra, 572, in construing the effect of the act of 1903, we said: "The General Assembly . . . specifically made the terms of this contract obligatory upon the city and company. . . . It was as though the contract had been made directly with the General Assembly." The long established rule is that "the legislature of the state has

power to legalize or ratify an ultra vires contract entered into by a municipal corporation for a public purpose, and when thus ratified the contract will be valid and binding, provided the legislature had the power to authorize the making of the contract in the first instance." 3 McQuillin, Municipal Corporations (2d Ed.), § 1363. Dillon, in Municipal Corporations (5th Ed.), Vol. 1 § 129, says: "*In general, however, the legislature may, by subsequent act, validate and confirm previous acts of the corporation otherwise invalid.* If the act could have been lawfully performed or done under precedent legislative authority, the legislature may subsequently ratify it and give it effect." See also *Los Angeles City Water Co.* v. *Los Angeles,* 88 Fed. 720, 742; *Brown* v. *Mayor,* 63 N. Y. 239, 243; *Steele County* v. *Erskine,* 98 Fed. 215, 217, 39 C. C. A. 173.

In *Bridgeport* v. *Housatonuc R. Co.,* 15 Conn. 475, 494, we said: "Although individuals may not have power to make good *ab initio,* that which was originally void, by subsequent deeds or acts of confirmation; yet this cannot be true of acts of sovereignty—acts of legislation not conflicting with constitutional right. And in giving a construction to such an act, the only question can be, what was the intention of the legislature? When this is ascertained, our duty is imperative to give to that intention its legal effect. In the present case, there exists no doubt on this point. The declared purpose of the city in asking legislative interference, was, to give validity to its previous votes, not to perpetuate their infirmity, if such infirmity there was. To comply with the request of the city, was the object of the legislature in passing the resolve —not to defeat and disappoint it." In *Connelly* v. *Bridgeport,* 104 Conn. 238, 252, 132 Atl. 690, we said: "As between the charter and ordinances of the defendant city and the later Act of the legislature, the

paramount authority of the latter is unquestioned. The right of self-government by charter and ordinances is itself a legislative grant and is held by the city at the will of the legislature and subject to such change or modification as the latter may at any time see fit to make."

The contract and order of 1902 were made binding on the city and the water company by the act of 1903. The claim made in the city's special defense to the effect that the contract was abrogated by an order of the public utilities commission made in 1932 and, therefore, was not in effect during the period for which the plaintiff is seeking reimbursement was not pursued in the brief and we do not consider it. The claim that the contract provided for free water is negatived by the clear language of the contract itself.

The status of the Fairmount Association requires but brief discussion. It is a municipal corporation functioning within the territorial limits of the city's thirty-second ward, which formerly was the fifteenth ward. It has limited powers and obligations. It is entitled to receive restricted and limited services from the city and it pays to the city a maximum tax rate of but four mills. The city makes many claims as to the liability of the association to furnish water to the annex fire department, another municipal subdivision functioning within the thirty-second ward, for the purpose of fighting fires. An exhaustive statement of the factual background would be required in order to test this claim. We do not go into this because of the following consideration. The city's claim is that fire protection was necessary in the district; that the association had authority to provide it; that the city was not authorized to do so; and that therefore the association was liable to pay for it, including water service. This argument is vitiated by our conclusion

that the city does have power to provide the water. Another claim is that the association was liable because it voluntarily accepted service beneficial to the residents of its territory. In the absence of a finding of any other circumstances giving rise to an implied contract, the association could not be held liable. The trial court expressly found that the association never requested the service. As the city always had paid for the service until the present controversy arose, and then the association refused to acknowledge responsibility, there was no such voluntary acceptance as the rule invoked by the city requires. *Chatfield* v. *Fish*, 126 Conn. 712, 713, 10 Atl. (2d) 754; *Loomis* v. *Fifth School District,* 109 Conn. 700, 703, 145 Atl. 571. The Fairmount Association is not liable in the present action.

The plaintiff's complaint contained a second count which concerned a small bill for water furnished for fire protection within the limits of a municipal subdivision known as the Fair Haven East Association and its successor the Fairmount Association. The trial court found that the city was liable, and it included the amount of the water bill in the judgment. The considerations controlling the decision as to the second count are substantially the same as those governing the first count, as already stated, and no further discussion is necessary.

The plaintiff has appealed because the judgment did not include interest from the dates when the sums found due became payable. The plaintiff could have brought a simple action of debt against these two defendants, and if either or both were found liable the judgment would include interest, as damages for the detention of the money after it became payable. General Statutes, § 4731; *Belisle* v. *Berkshire Ice Co.,* 98 Conn. 689, 697, 120 Atl. 599. The plaintiff chose

to bring the action as one seeking a declaratory judgment to determine which of the defendants was responsible for the water furnished and as consequential relief asked damages from the defendant so determined to be responsible. *Joy Co., Inc.* v. *New Amsterdam Casualty Co.*, 98 Conn. 794, 805, 120 Atl. 684. This does not alter the situation. The consequential relief is administered in exactly the same manner as if it were an independent suit without relation to the prayer for declaratory relief, and it should be as full and complete as if it had been asked in an independent action. In an action for debt it is not necessary to ask for interest as damages; it was not necessary in the present action.

We do not allude to cases in other jurisdictions, for they construe the language of the particular statute there in force. We have construed our own statute as to declaratory judgments with consistent liberality in order to effectuate its language and purpose. Under our law a party who properly resorts to an action for a declaratory judgment is not required to bring an independent action to enforce the right thereupon declared. *Joy Co., Inc.* v. *New Amsterdam Casualty Co.*, supra. There is no sound reason why the consequential relief asked in a case like the present one should not be as complete as if it had been sought in an independent action.

There is no error on the appeal of the defendant city of New Haven. There is error on the appeal of the plaintiff, the judgment is set aside only in so far as it awards damages, and the trial court is directed to enter judgment for the plaintiff to recover from the defendant city of New Haven the sum of $14,180.20, with interest in accordance with this opinion.

In this opinion the other judges concurred.