BENEDICT v. CITY OF NEW YORK et al.

(Circuit Court of Appeals, Second Circuit. December 7, 1899.)

No. 47.

1. EMINENT DOMAIN- -CONDEMNATION PROCEEDINGS—CONFIRMATION OF REPORT OF COMMISSIONERS.

In proceedings to condemn property for public use on an application to confirm the award of commissioners of appraisal, the court will not ordinarily weigh conflicting evidence of value, but will refuse to confirm only when it appears that the commissioners have proceeded upon a wrong principle.

2. SAME—COMPENSATION FOR PROPERTY TAKEN—TIME AT WHICH VALUE IS TO BE ESTIMATED.

The fundamental doctrine that private property cannot be taken for public use without just compensation does not require that the compensation be made in all cases concurrently in point of time with the actual exercise of the right of eminent domain, but, at whatever time it is to be made under the statute, just compensation entitles the owner to the full market value of his property at the time of the taking, and that time is to be determined by the terms of the particular statute under which the proceedings are had.

3. SAME—TIME WHEN PROPERTY IS TAKEN.

Laws N. Y. 1883, c. 490, authorizing the city of New York to construct a new aqueduct for the purpose of a water supply, and to condemn lands necessary therefor, provides for the adoption by the aqueduct commissioners of maps showing the lands to be acquired in sections, which maps are to be filed in the county in which the lands are situated, after which it is made the duty of the counsel of the corporation to apply to the court for the appointment of commissioners of appraisal, who are to make and file in the office of the clerk or register of each county in which such lands are situated an oath of office, and then proceed to appraise the property. The act further declares (section 10) that upon the filing of the oath of said commissioners the city shall "become seized in fee of, and may immediately enter into possession of and occupy in perpetuity," all the lands shown on the maps filed as those to be acquired, and provides that in making compensation to the owner interest shall be allowed from that

time. *Held*, that in appraising the property its value should be taken as of that time, and not as of the time when the map was filed, which did not devest the owner of any of his rights therein.

Appeal from the Circuit Court of the United States for the Southern District of New York.

R. L. Sweezy, for appellant.
H. T. Dykman, for appellees.

Before WALLACE and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The city of New York, under chapter 490 of the Laws of New York of 1883,—being the act to authorize the construction of a new aqueduct for the purposes of a water supply for the city,—instituted proceedings in the supreme court of the state for the appointment of commissioners of appraisal to acquire for public use certain lands in the county of Westchester. The appellant, owner of some of the lands sought to be acquired, and a citizen of New Jersey, removed the proceedings, so far as they related to his lands, to the circuit court of the United States for the Southern district of New York. Commissioners of appraisal were appointed by the court, and, after viewing the premises, and hearing the evidence produced before them, they duly made and filed their report, and it was thereafter confirmed by an order of the court. From the order of confirmation this appeal has been brought.

In proceedings to acquire property for public use, the court, on an application to confirm the award of the commissioners of appraisal, will not ordinarily weigh conflicting evidence in considering whether it is adequate or excessive; but, if the commissioners have proceeded upon a wrong principle, the court will refuse to confirm.

It is insisted for the appellant that the commissioners did proceed upon a wrong principle, and that the court therefore erred in confirming the award. The contention is that the commissioners did not allow him the value of his lands at the time they were taken, and confined their inquiries to ascertaining the value at a later date when the property had considerably depreciated in value.

The fundamental doctrine that private property cannot be taken for public uses without just compensation does not require that the compensation be made in all cases concurrently in point of time with the actual exercise of the right of eminent domain; and it is competent for the legislature, in the absence of any constitutional interdiction, to prescribe whether the compensation be made at the time of the projection of the work, at the inception of the condemnation proceeding, at any subsequent stage of the proceeding, or at the time of taking actual possession of the property for the construction of the work. But, at whatever time the compensation is to be made or paid, just compensation entitles the owner to the full market or pecuniary value of his property at the time of the taking; and the authorities are so generally in accord upon this proposition that it may be accepted as the settled rule. There is much diversity, however, in the adjudications in applying this rule, owing to the diversity in the statutes authorizing condemnation. See 10 Am. & Eng. Enc. Law

(2d Ed.) 1147, where the citations are collected. By some of the statutes the owner is devested of his title or possession, actually or potentially, at the time of the enactment; while by others this does not occur until the proceeding has arrived at some advanced stage of progress, or been finally consummated, or until his damages have been paid. In every case, therefore, the application of the rule depends upon the provisions of the particular statute in terminating the dominion of the owner and segregating the property for the public use.

The present act provides for the appointment of commissioners to be known as "aqueduct commissioners," who are to adopt plans and maps, and have the general supervision of the entire work contemplated. It authorizes them from time to time to change or modify such plans and maps. The real estate to be acquired is to be denoted on the maps, and the maps are to be filed in the office of the clerk or register of each county in which any real estate is located. The maps are to be made and filed in sections. Proceedings to acquire the lands of one or more sections may be taken before the maps of all sections are filed, and the work upon one or more sections may be begun before the maps of the remaining sections are filed. After the maps are filed and transmitted by the commissioners with a certificate of their approval by the counsel of the corporation, it is his duty to apply to the supreme court for the appointment of commissioners of appraisal, and these commissioners, when appointed by the court, are to make and file in the office of the clerk or register of each county in which any of the real estate sought to be acquired is situated an oath of office, and then proceed to the appraisement of the property. The act declares (section 10) that upon the filing of the oath of said commissioners the city of New York shall be and become seised in fee of, and may immediately enter into possession of, and occupy in perpetuity, all the lands shown on any map filed by the aqueduct commissioners which they have determined should be acquired. The commissioners of appraisal, after hearing the parties, are to make a report specifying the amount to be allowed to the owner as compensation for the property taken. After confirmation of the report by the court, the city of New York is required within four months to pay the amount of the awards, with interest from the date of the filing of the oaths of the commissioners of appraisal.

Pursuant to the powers conferred upon them by this act, the aqueduct commissioners adopted plans and maps. Among the maps filed was one describing the lands of the appellant. This map was filed in the office of the register of Westchester county August 10, 1896. The commissioners of appraisal in the condemnation proceeding filed their oaths of office May 4, 1898. In their award of compensation to the appellant they allowed him the value of his lands at the date of the filing of their oaths, refusing to allow him its value at the date of the filing of the map in the register's office of Westchester county.

The appellant insists that the lands were taken at the time of the filing of the map. If that contention is correct, the commissioners

of appraisal erred, and the court below ought not to have confirmed the award.

We are of the opinion that the filing of the map was not a definite appropriation of the lands denoted on it, and did not interfere in any way with the use or enjoyment by the owners. Bauman v. Ross, 167 U. S. 548–596, 17 Sup. Ct. 966, 42 L. Ed. 270. The owners were at liberty, after it had been filed, to use the lands as before, and until the institution of condemnation proceedings to make any improvements they might see fit. Wagner v. Perry, 47 Hun, 518; Forster v. Scott (Super. N. Y.) 17 N. Y. Supp. 479; Shoemaker v. U. S., 147 U. S. 282, 13 Sup. Ct. 361, 37 L. Ed. 170.

There is no language in the act to preclude the aqueduct commissioners from changing the plan of the work after the filing of the maps, if, in their judgment, it should seem expedient, or the city, with their co-operation, from proceeding to acquire lands denoted upon new maps filed in substitution. Even the condemnation proceeding could have been discontinued and abandoned after it was commenced. The power usually resides in municipal corporations at any time before taking possession of the property under completed proceedings, or the final act of confirmation, to recede and discontinue the proceedings they have instituted. Dill. Mun. Corp. 473. Such is the law in New York as declared by its highest court. "A public body, or public officers, to whom the right of eminent domain has been delegated by the legislature for public purposes exclusively, may be permitted to discontinue proceedings instituted by them pursuant to the act delegating power to acquire title to lands at any time before the title is acquired and the rights resulting therefrom have become vested in the proprietor." In re Commissioners of Washington Park, 56 N. Y. 144. In Re Military Parade Ground, 60 N. Y. 319, the court of appeals, reaffirming this doctrine, applied it to a case where the proceeding was pursuant to a statute authorizing the proper officers to lay out a parade ground, which declared that upon the filing of a map showing its location and extent it should "become and be one of the public squares or places" of the city.

The lands were taken when the commissioners of appraisal filed their oaths of office. They were taken at that time because by the terms of section 10 the city then acquired the right to occupy them in perpetuity, subject, of course, to a condemnation proceeding. Until then the purpose to appropriate them was merely a tentative one, and the proceeding might never culminate in an actual appropriation. Until then there was no statutory act indicative of a final intention by the city to acquire lands. It was the contemplation of the legislature that they should be deemed taken at that time, and compensation awarded with reference to it, because the act provides that from that time the city shall pay interest upon the amount.

The adjudications in which it has been held that the date of the filing of a map is to be deemed the time of the appropriation were in cases where the statute by terms or implication made the act a virtual taking of the property. Thus the Massachusetts decisions are founded upon a statute authorizing the corporation, upon filing

the location, to take possession of the land defined within the boundaries; unless an application for estimating damages is made to the county commissioners before the actual appropriation. In Re Munson, 29 Hun, 325,—much relied upon by appellant's counsel,— the statute provided that, when the map was filed, the property designated upon the map "should become and be one of the public squares or places" of the city. In Re Public Parks, 53 Hun, 280, 6 N. Y. Supp. 750, the statute located the lands to be taken by metes and bounds. In both cases the property was set apart for public use by the filing of the map, and the proceeding for condemnation was only necessary to perfect the title to the lands appropriated. These decisions are of little value in the present case, where the statute does not purport to give any final and determinative effect to the filing of the map.

We conclude that there was no error in the award of the commissioners of appraisal, and that the court below properly affirmed their report.

The order is affirmed, with costs.