TEXTRON, INC. *v.* A. EARL WOOD, COMMISSIONER OF TRANSPORTATION

COTTER, SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued October 2—decision released December 3, 1974

*Victor Feingold* and *Paige J. Everin,* assistant attorneys general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellant (defendant).

*Bruce W. Manternach,* with whom was *Jack S. Kennedy,* for the appellee (plaintiff).

COTTER, J. In this action the plaintiff seeks a declaratory judgment determining "whether the plaintiff's property has been effectively taken by the defendant and if so, the date of such taking." The case was referred to Hon. Howard W. Alcorn, state referee, who, exercising the powers of the Superior Court, answered the question propounded in the affirmative and concluded that the property

---

[1] In view of the answer to the first question, an answer to the second became unnecessary.

"in a constitutional sense" was "taken by the Highway Department on September 8, 1966." The defendant has appealed from the judgment rendered and from the denial of the defendant's motion to open judgment.

The finding is not subject to any material change and discloses the following facts: The Fafnir Bearing Company, a Connecticut corporation, owned and operated several manufacturing plants in the towns of New Britain and Newington, one of which was located on John Street in New Britain. In August, 1962, the state highway department notified Fafnir that a proposed construction of state highway, route 72, might pass through all or a portion of the John Street plant. On November 4, 1965, at a meeting with representatives of the highway department, Fafnir learned from an aerial photograph on which taking lines had been drawn that the proposed highway would take two whole buildings and about half of another, and that the plant's truck dock would be rendered unusable. Department representatives further informed Fafnir at this meeting that the proposed route could not be varied by as much as fifteen feet.

At another meeting with highway department representatives, in November, 1965, Fafnir was told that the taking lines were fixed, that these could not be significantly changed, and that both Fafnir and the highway department should proceed thenceforth on that basis. At that meeting Fafnir expressed concern over the effect which the taking would have on the operations at the John Street plant and emphasized the great amount of time Fafnir needed to meet the problem.

Two months later, in January, 1966, the department prepared a map which depicted the taking of

a triangular portion of the John Street plant containing about .77 acre with buildings or parts of buildings thereon, then being used by Fafnir for parking, truck access, and steel storage. Over the years slight revisions of the taking map have been made, none of which made a significant change in the property to be taken as shown in the map of January, 1966. Then, on March 8, 1966, the department formally wrote Fafnir that it had found it necessary to acquire a portion of the John Street property; that it was promptly proceeding with surveys and title searches; that appraisers would soon visit the property; that it would then discuss the purchase of the property; and that it hoped this would help Fafnir in its planning. Previously in January, 1966, highway department appraisers had already visited the property and Fafnir had furnished them data and information. Fafnir again met with highway department officials on April 12, 1966, and told them that it would be necessary to build and move to a new location, an operation whose completion would take about eighteen to twenty months. Fafnir considered it imperative that the vital operations of the John Street plant not be interrupted. In response, the highway department considered the possibility of a tunnel design for that portion of the route, but this solution was found to be unacceptable to both Fafnir and the department.

Fafnir was told by the department that it must be out of the John Street property which was to be taken by 1967. Accordingly, Fafnir's board of directors on July 21, 1966, voted to move the John Street plant operations to an addition to be constructed at the company's Newington plant, in order to avoid a cessation of operations which, it was felt,

the taking process would necessitate. Later that month, on July 25, the highway commissioner informed Fafnir that "our design people" were being advised to proceed with normal highway construction through the area adjacent to Fafnir's building and that the rights-of-way bureau would also be advised to proceed on that basis.

In September, 1966, the department advertised projects tentatively scheduled for construction bids, including a notice that the portion of route 72 through the John Street plant was scheduled to be advertised for construction bids in November, 1966. Pursuant to General Statutes § 13a-57, on September 8, 1966, the department filed a map in the New Britain town clerk's office depicting the layout of route 72 which ran through Fafnir's John Street property.

In the same month, Fafnir began construction of the addition to its Newington plant, and during the summer of 1967 it completed this construction and moved the John Street operations to the Newington factory.

In January, 1967, the highway department advised Fafnir that actual construction would not begin until the summer of 1969, and completion would take place in two years. Over a period of several years, department representatives repeatedly stated their intention to initiate formal statutory condemnation proceedings by filing the certificate of taking as provided in § 13a-73 (b) of the General Statutes. There was evidence, and the trial referee in the unchallenged finding so found, that the defendant was fully prepared to proceed with the statutory taking both in February, 1971, and at the time of trial. Nevertheless, no statutory pro-

cedure to take the property was undertaken until August 22, 1973, when the defendant finally filed the certificate of taking, pursuant to § 13a-73 (b).

## I

The defendant has challenged the jurisdiction of the lower court to entertain this action on several grounds. First, it is argued that the suit, although nominally brought against the commissioner of the department of transportation, is in truth one against the state; and that since the latter has not formally consented to be sued, and since there is no statute specifically authorizing actions against the state for declaratory judgments, the suit is barred by the doctrine of sovereign immunity. Although this defense was raised for the first time in the defendant's brief on appeal, questions such as this involving the court's jurisdiction must be considered by this court if and when they are raised. *Wawrzynowicz* v. *Wawrzynowicz,* 164 Conn. 200, 203, 319 A.2d 407; *State ex rel. Kelman* v. *Schaffer,* 161 Conn. 522, 527, 290 A.2d 327; see Maltbie, Conn. App. Proc. § 307.

Connecticut has long recognized the common-law rule that the state, as a consequence of its sovereignty, is immune from suit unless by appropriate legislative action it has consented to be sued. See *Baker* v. *Ives,* 162 Conn. 295, 298, 294 A.2d 290, and the many cases cited; and see *Fidelity Bank* v. *State,* 166 Conn. 251, 348 A.2d 633, for a recent formulation of the doctrine. The same immunity extends to such state officers as the defendant when acting in the performance of the sovereign power, since an action against the state highway commissioner is in effect one against the state as sovereign. *Baker* v. *Ives,* supra. The state is a legal entity which can function only through its

officers and agents or other duly constituted and qualified authorities. *State* v. *Aetna Casualty & Surety Co.,* 138 Conn. 363, 367–68, 84 A.2d 683. Rooted in the ancient common law, the doctrine of sovereign immunity from suit was originally premised on the monarchical, semi-religious tenet that "the King can do no wrong." Borchard, "Government Liability in Tort," 34 Yale L.J. 1, 2. In modern times, it is more often explained as a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities. See, e.g., *United States* v. *Lee,* 106 U.S. 196, 206, 1 S. Ct. 240, 27 L. Ed. 171; Block, "Suits against Public Officers and the Sovereign Immunity Doctrine," 59 Harv. L. Rev. 1060, 1061; *Glassman* v. *Glassman,* 309 N.Y. 436, 131 N.E.2d 721. The public service might be hindered, it is believed, and the public safety endangered, if the supreme authority of the state could be subjected to suit at the instance of every citizen, and thereby controlled in the use and disposition of the means required for the proper administration of government. *Fitts* v. *McGhee,* 172 U.S. 516, 19 S. Ct. 269, 43 L. Ed. 535.

The defendant contends that these principles and policies constitute an insurmountable obstacle to the plaintiff's prayer for a declaration of its rights in the present case. The fundamental reasons underlying the doctrine of sovereign immunity, however, have no application here. This is not a case in which the plaintiff seeks a judgment that will enable it to "control the activities of the state," the customary touchstone upon which this court has determined whether a particular suit is one "against" the state. *Simmons* v. *Parizek,* 158 Conn. 304, 306, 259

A.2d 642. See also *Murphy* v. *Ives,* 151 Conn. 259, 262, 196 A.2d 596; *Anderson* v. *Argraves,* 146 Conn. 316, 319–20, 150 A.2d 295; *Somers* v. *Hill,* 143 Conn. 476, 480, 123 A.2d 468. The plaintiff, by this action for a declaratory judgment, is not demanding any affirmative or coercive relief against the state or any of its officials. Textron did not couple with its request for a judicial declaration of its rights a prayer for damages or any other consequential relief, a course open to plaintiffs bringing actions for declaratory judgments where many other kinds of jural relations are the subject of controversy. See, e.g., *New Haven Water Co.* v. *New Haven,* 131 Conn. 456, 464, 40 A.2d 763; *Joy Co., Inc.* v. *New Amsterdam Casualty Co.,* 98 Conn. 794, 805, 120 A. 684; Maltbie, Conn. App. Proc. § 227. It is true, of course, that "[u]nder our law a party who properly resorts to an action for a declaratory judgment is not required to bring an independent action to enforce the right thereupon declared"; *New Haven Water Co.* v. *New Haven,* supra; since prayers for coercive or affirmative relief based on an adjudication of the rights of the parties may be joined to the prayer for a declaration; and such relief where appropriate is to be administered as though it were sought in a separate action. Practice Book § 310 (c), (d); see also Maltbie, op. cit. § 227. Such, however, was not the procedure followed by the plaintiff. The plaintiff throughout this litigation has had to face the necessity of translating into actual damages in another proceeding any rights which might be declared herein. See *Connecticut Savings Bank* v. *First National Bank & Trust Co.,* 133 Conn. 403, 412, 51 A.2d 907. The only remedy sought in the instant action is a declaration of the plaintiff's rights pursuant to article first, § 11, of the Connecticut con-

stitution under the facts presented herein. This is not, therefore, the kind of action from which the state requires the protection afforded by the defense of sovereign immunity. Significantly, it has been held elsewhere that the doctrine was not meant to apply to actions which seek, as the plaintiff seeks here, nothing more than a declaration of legal rights. See *Curry* v. *Woodstock Slag Corporation,* 242 Ala. 379, 381, 6 So. 2d 479; *Drainage Board* v. *Village of Homer,* 351 Mich. 73, 85, 87 N.W.2d 72; *Town of Ohio* v. *People,* 264 App. Div. 220, 35 N.Y.S.2d 107; *Texas Assn. of Steel Importers, Inc.* v. *Texas Highway Commission,* 364 S.W.2d 749 (Tex. Civ. App.), aff'd, 372 S.W.2d 525. Such a conclusion is consistent with the law of this state.

Moreover, this court, has indicated on several occasions that the doctrine of sovereign immunity is not available to the state as a defense to claims for just compensation arising under article first, § 11, of the Connecticut constitution. We have said, for example, that "[w]hen possession has been taken from the owner, he is constitutionally entitled to any damages which he may have suffered, and if our statute failed to provide a remedy he could, nevertheless, sue to recover such damages. 6 Nichols, Eminent Domain § 26.42[1]." *Trumbull* v. *Ehrsam,* 148 Conn. 47, 55–56, 166 A.2d 844. See also *McKeon* v. *New York, N.H. & H.R. Co.,* 75 Conn. 343, 348, 53 A. 656. We have further stated that for this reason, "where the state takes property no specific permission to sue it is necessary." *Anselmo* v. *Cox,* 135 Conn. 78, 81, 60 A.2d 767, cert. denied, 335 U.S. 859, 69 S. Ct. 132, 93 L. Ed. 405. It would unduly strain the tendons of the legal imagination to hold that the doctrine of sovereign immunity prevents an allegedly aggrieved property

owner from seeking the minimal relief of a declaration of his rights pursuant to article first, § 11, of the Connecticut constitution when the doctrine may not be invoked as a bar to an action for monetary damages arising under that same provision. We conclude that the defense of sovereign immunity does not preclude this action under the unique, special circumstances of this case.

The defendant assigns as error the denial of his motion to open judgment, in which he reiterated his trial court argument that the court should have dismissed the action for lack of jurisdiction on the ground that alternative procedures for relief were available to the plaintiff. Under Connecticut practice, a court will not render declaratory judgments where the court "shall be of the opinion that the parties should be left to seek redress by some other form of procedure." Practice Book § 309 (c). "Where the complaint, on its face, discloses that another adequate remedy exists, the complaint is vulnerable to demurrer." *Hartford Accident & Indemnity Co.* v. *Williamson,* 153 Conn. 345, 349, 216 A.2d 635; see also *Redmond* v. *Matthies,* 149 Conn. 423, 426, 180 A.2d 639; *Wexler Construction Co.* v. *Housing Authority,* 144 Conn. 187, 194, 128 A.2d 540. A challenge to the court's jurisdiction based on this ground should be sustained only if rendition of the judgment would constitute an abuse of the court's discretion. *Glens Falls Ins. Co.* v. *Somers,* 146 Conn. 708, 713–14, 156 A.2d 146. The defendant did not raise his objection, as he might have done, by way of demurrer, but raised it only at the time his brief was filed in the lower court after trial. Nonetheless the question of the plaintiff's right to maintain an action for a declaratory judgment goes to the court's jurisdiction and must be

considered when it is raised. *United Oil Co.* v. *Urban Redevelopment Commission*, 158 Conn. 364, 384, 260 A.2d 596. Whatever alternative remedies may have been available to the plaintiff at the time of the commencement of this action, its prayer for relief raised the question whether the course of conduct such as that engaged in by state highway officials in this case short of initiation of formal statutory condemnation proceedings can amount to a taking of property in the constitutional sense, a question far-reaching in its implications and of fundamental importance to the people of this state. The court acted well within its discretion when it entertained this action for a declaratory judgment involving issues of "considerable public importance," despite the purported availability of other remedial procedures. *Larke* v. *Morrissey,* 155 Conn. 163, 169, 230 A.2d 562.

## II

The defendant claims that the facts as found by the trier below do not support the conclusion and judgment of the court that under the circumstances of this case the plaintiff's property in question was "taken," within the meaning of article first, § 11, of the Connecticut constitution,[2] as a result of the defendant's course of conduct leading up to and culminating in the filing of the layout map in the New Britain town clerk's office on September 8, 1966. The defendant further argues that, absent a showing of the initiation by the state of formal condemnation proceedings as provided under General Statutes § 13a-73 (b), a judicial declaration that private property has been taken by the state in a "constitu-

---

[2] Constitution of Connecticut, article first, § 11: "The property of no person shall be taken for public use, without just compensation therefor."

tional" sense can be predicated only upon a "substantial interference" by the state with the owner's property, and the defendant recognizes an actionable wrong and a right to compensation for a de facto taking in the constitutional sense where property rights were impaired by an authority which failed to exercise its power of eminent domain. The court's conclusions are to be tested by the finding. *Hutensky* v. *Avon,* 163 Conn. 433, 437, 311 A.2d 92; *Brockett* v. *Jensen,* 154 Conn. 328, 331, 225 A.2d 190. The conclusions reached by the court must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. *Schnier* v. *Ives,* 162 Conn. 171, 177, 293 A.2d 1; *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 79, 239 A.2d 500.

In actions involving public condemnation of private property pursuant to the government's exercise of its right of eminent domain, the questions of the fact and the time of the taking of the property are important for two reasons. First, for the property owner's right of just compensation to accrue, there must be a taking or injury of property within the meaning of a particular jurisdiction's constitutional or statutory provision granting the right of compensation. *Katz* v. *Connecticut,* 307 F. Sup. 480 (D. Conn.), aff'd, 433 F.2d 878 (2d Cir.); 29A C.J.S., Eminent Domain, § 110. Secondly, "[t]he damages sustained in a taking by eminent domain are to be measured as of the date of the taking." *Research Associates, Inc.* v. *New Haven Redevelopment Agency,* 152 Conn. 137, 139, 204 A.2d 833; *Slavitt* v. *Ives,* 163 Conn. 198, 207, 303 A.2d 13.

A taking of private property by the state for highway purposes under Connecticut's statutory

eminent domain procedure is complete when the assessment provided for by General Statutes § 13a-73 (b) is filed with the clerk of the Superior Court. *Slavitt* v. *Ives,* supra, 206; *Carl Roessler, Inc.* v. *Ives,* 156 Conn. 131, 139, 239 A.2d 538; *Clark* v. *Cox,* 134 Conn. 226, 228, 56 A.2d 512. But a taking may also occur in the so-called constitutional sense pursuant to article first, § 11, of the Connecticut constitution by a substantial interference with private property which destroys or nullifies its value or by which the owner's right to its use or enjoyment is in a substantial degree abridged or destroyed. *Dooley* v. *Town Plan & Zoning Commission,* 151 Conn. 304, 311, 314, 197 A.2d 770; *Platt Bros. & Co.* v. *Waterbury,* 72 Conn. 531, 550, 45 A. 154. Actual physical possession of the property by the state, of course, constitutes a taking. *Carl Roessler, Inc.* v. *Ives,* supra, 144; *Trumbull* v. *Ehrsam,* 148 Conn. 47, 55-56, 166 A.2d 844. But there can be a de facto taking of private property by the state without any such actual, physical appropriation. *Slavitt* v. *Ives,* supra; *Stock* v. *Cox,* 125 Conn. 405, 419, 6 A.2d 346. The situations in which the concept of de facto condemnation applies, however, are limited: Mere planning by a government body in anticipation of the taking of land for public use and preliminary steps taken to accomplish this without the statutory filing of condemnation proceedings and without physical taking is not actionable by the owner. See *Robie* v. *Massachusetts Turnpike Authority,* 347 Mass. 715, 720-21, 199 N.E.2d 914; *City of Buffalo* v. *Clement Co.,* 28 N.Y.2d 241, 258, 321 N.Y.S.2d 345; annot., 37 A.L.R.3d 127, 132. There must at least be some legal interference with the owner's power of disposition over the property, a substitution of the condemnor's dominion and control over

the property for that of the condemnee. As this court has said: "The rule is firmly established in this state that where no land is physically taken and no interest in it which the law recognizes is extinguished or affected in a manner detrimental to the owner, the prohibition contained in article first, § 11, of our constitution against the taking of property for public use without just compensation does not apply." *Benson* v. *Housing Authority,* 145 Conn. 196, 200, 140 A.2d 320. See also *Bishop* v. *New Haven,* 82 Conn. 51, 58, 72 A. 646, where it was stated that the word "taken" in a constitutional sense "means generally the exclusion of the owner from his private use and possession, and the assumption of the use and possession for the public purpose by the authority exercising the right of eminent domain."

The precise dimensions of a "substantial interference" sufficient to amount to a taking in the constitutional sense are not always clear since the concept of substantial interference is not a static one, but one that has developed over the years in response to the changing needs of our society.[3] It

---

[3] Courts in other jurisdictions have considerably revised many of the traditional principles of the law of eminent domain in recent years. Under one line of authority, statements and actions by the condemning authority prior to the statutory taking, indicating a firm intent to condemn a person's property and having a demonstrably adverse impact upon his interests, are described as amounting to a "promise" by the state to take the property, upon which the person may justifiably rely, even if it is to his detriment. *Hilltop Properties* v. *State of California,* 233 Cal. App. 2d 349, 362-69, 43 Cal. Rptr. 605. According to another view, conduct by the state which substantially contributes to and accelerates the decline in value of a person's property amounts to a taking of the property within the meaning of the fifth amendment to the United States constitution and provisions similar to article first, § 11, of the Connecticut constitution. *Foster* v. *City of Detroit, Michigan,* 254 F. Sup. 655, 665-66 (E.D. Mich.), aff'd, 405 F.2d 138 (6th Cir.); *In re Urban Renewal,*

is certain, however, that an essential requirement to establish a taking in the constitutional sense under Connecticut law as it has evolved is that the state's "substantial interference" with a landowner's property rights involves the invasion of some specific legal interest in the property. *Dooley* v. *Town Plan & Zoning Commission*, supra; *Benson* v. *Housing Authority*, supra; *Bishop* v. *New Haven*, supra. The reason for this common constitutional requirement is the need for some definitive indication that the state's intent to condemn the property in question has become fixed and irreversible. See *Carl Roessler, Inc.* v. *Ives*, supra, 136, citing 6 Nichols, Eminent Domain (3d Ed.) § 26.42; *State* v. *Vaughn*, 319 S.W.2d 349, 354 (Tex. Civ. App.); *Benedict* v. *City of New York*, 98 F. 789, 792 (2d Cir.). The significance of this indication stems from the fact that once the state has reached a final decision to take a parcel of private property, no one, not even the federal government, can interfere with the sovereign's right to properly exercise its power of eminent domain. *Boom Co.* v. *Patterson*, 98 U.S. 403, 406, 25 L. Ed. 206. The reason for this is that

---

*Elmwood Park*, 376 Mich. 311, 318, 136 N.W.2d 896. A third line of inquiry has recently led the New York Court of Appeals to conclude that the financial stress experienced by landowners, attributable to the substantial delay and other "value depressing" conduct of the state in the period between announcement of a project and the formal statutory condemnation, should be considered when computing the "just compensation" to be awarded to the property owner. *City of Buffalo* v. *Clement Co.*, 28 N.Y.2d 241, 258, 321 N.Y.S.2d 345. The result achieved under this latter analysis is similar to, indeed more extensive than, that provided under a recent Connecticut statute, which allows the trier, in determining the amount of just compensation, to award an additional sum upon a showing of an unreasonable delay between the public notice of the projected improvement and the actual taking. General Statutes § 13a-76a. This legislation did not take effect until June 21, 1967, and is not retroactive. *Little* v. *Ives*, 158 Conn. 452, 262 A.2d 174.

"the power to appropriate private property for public use is an attribute of sovereignty and essential to the existence of government." *Northeastern Gas Transmission Co.* v. *Collins,* 138 Conn. 582, 586, 87 A.2d 139. Also, absent this requirement, the determination of issues raised as to the precise time of the taking of the property by the state, essential to the proper computation of complex compensation awards, would become a matter almost exclusively of judicial discretion, depriving both the property owner and the state of the capacity to reasonably gauge their respective rights and effectively plan their future activities.

In this case, state highway officials revealed the irreversibility of their department's intent to condemn the plaintiff's John Street property over a period of time from January, 1966, to September, 1966. By notifying the plaintiff of the necessity to acquire its property, by ordering Fafnir to be out of the plant by 1967, by filing a map which had the statutory effect of depicting that property as part of a legally laid out state highway, and by publishing its intent to advertise for bids for construction on the property, the state highway department made known to the plaintiff a decision to condemn the property which can only be said to have had assumed all the appearances of finality. As a result of these and other statements, decisions and actions by the state, the options open to Fafnir with respect to the disposition of its John Street operations became severely curtailed, and Fafnir was no longer able freely to use its property as it wished. It would have been wholly futile, for example, for Fafnir to have seriously considered expanding its activities or its facilities at the plant on the baseless hope that formal condemnation somehow would not occur.

These facts, as they were found by the trial referee, support his conclusion that the state's conduct substantially interfered with and lessened the plaintiff's right to the use and enjoyment of the property. See *Hutensky* v. *Avon,* 163 Conn. 433, 311 A.2d 92; *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 239 A.2d 500; *Brockett* v. *Jensen,* 154 Conn. 328, 225 A.2d 190. Accordingly, there was no error in the judgment that the property in issue was taken on September 8, 1966, in a constitutional sense. *Slavitt* v. *Ives,* 163 Conn. 198, 303 A.2d 13; *Dooley* v. *Town Plan & Zoning Commission,* 151 Conn. 304, 197 A.2d 770; *Stock* v. *Cox,* 125 Conn. 405, 6 A.2d 346; *Platt Bros. & Co.* v. *Waterbury,* 72 Conn. 531, 45 A. 154. For by this date the state highway department's intention to take the plaintiff's property had become irreversible. We hold, in view of the exceptional and extraordinary circumstances presented by the unique facts of this case, that the prohibitory statements, decisions and actions by the defendant evidenced an unequivocal intention to take the plaintiff's property, to the point where the landowner's capacity to freely dispose of that property was for all practical purposes effectively arrested; constituted a "substantial interference" with its property rights; and amounted to a taking of the property in a constitutional sense.

## III

The defendant has also assigned error in the denial of his motion to open judgment and dismiss the action on the ground that Fafnir had not been joined as a party pursuant to Practice Book § 309 (d), which states that a court will not render declaratory judgments upon the complaint of any person "unless all persons having an interest in the

subject matter of the complaint are parties to the action or have reasonable notice thereof." The gist of the defendant's argument is that Textron cannot properly represent Fafnir to enforce those rights of Fafnir which arose at the time of the purported taking while Fafnir was still the owner of the property, unless Textron has a right of its own in the subject of the controversy which a decree can affect; the defendant claims the complaint in this action did not allege, nor is there a specific finding, that Textron is the "bona fide owner" and assignee of a chose in action which it acquired from Fafnir concerning an unconstitutional taking of Fafnir's property in 1966, as required by § 52-118 of the General Statutes.[4]

It appears from the allegations in the complaint, the evidence presented at the trial, and from the finding that Fafnir was the "predecessor" of Textron, that everything in its name was transferred to Textron, that all of its assets were acquired by its successor, Textron, and that it thereupon became a "division" of Textron. While the plaintiff, Textron, did not specifically allege in its complaint that it was the "actual bona fide owner" of any choses in action Fafnir might have had against the defendant arising out of the taking in a constitutional sense of the John Street property in 1966, this omission, if it was a defect at all, was merely one of pleading which the defendant might have taken advantage of by demurrer, and not by way of a post-judgment motion. See *Bennett* v. *Lathrop*, 71 Conn. 613, 616,

---

[4] "[General Statutes] Sec. 52-118. ACTION BY ASSIGNEE OF CHOSE IN ACTION. The assignee and equitable and bona fide owner of any chose in action, not negotiable, may sue thereon in his own name; but he shall in his complaint allege that he is the actual bona fide owner thereof, and set forth when and how he acquired title thereto."

42 A. 634, construing a predecessor statutory provision, viz., Rev. 1888 § 981. The ruling was not erroneous since this judgment gives to Fafnir every right which it could claim if it had been joined as a separate party. See *Auchincloss* v. *City Bank Farmers Trust Co.*, 136 Conn. 266, 273–74, 70 A.2d 105; see also Maltbie, Conn. App. Proc. § 230.

There is no error.

In this opinion the other judges concurred.