[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff is a partnership consisting of Victor J. Dowling, Jr. and Kevin V. Dowling. They appeal from an assessment of damages made by the defendant for the taking of their property located of the east side of Edwards Street in the City of Hartford. There is a frontage of about 120 feet on Edwards Street. Said premises are more particularly described in the plaintiffs' complaint, and are also known as No. 70 Edwards Street. The subject land is a Residence Zone, as is the case of most lots to the north. However, Business Zone, properties are to the immediate south and beyond. The subject premises are described as being in the fringe areas between business and residence zoning. They are also fairly close to the center of the city of Hartford. The subject property is one of several contiguous parcels which the plaintiffs have purchased for an assemblage to plan a large commercial development.
 I.
AS TO THE TAKING DATE
The negotiations for the acquisition of title by the City covers a substantial period of time. In 1986 the plaintiffs purchased 70 Edwards Street. On May 14, 1986 the Court of Common Council passed a resolution to acquire it by condemnation, if necessary. This action was taken for the Chestnut-Edwards Street Housing Project. On September 30, 1986 the defendant wrote to the plaintiffs advising that it proposed to make the acquisition. On October 22, 1986 a follow-up letter was sent by the defendant, and an offer was made to pay a sum slightly over $39,000. Later, on October 3, 1988 the defendant wrote to the plaintiffs offering to pay the sum of $60,000. This offer was not accepted. The evidence reveals that the next development was on February 8, 1991, when the defendant filed with the Clerk of the Superior Court a statement of compensation. The parties are agreed that on that date the sum of $60,000 was deposited with the Clerk.
The plaintiffs claim that the taking date was October 7, 1986. However, under General Statute 8-129 the taking date is the date on which the Certificate of Taking is recorded. This was done on March 12, 1991. Prior to that, so far as it appears, CT Page 886 no action taken by the City; only offers to purchase were made in the form of letters for the defendant to the plaintiff. The date of taking is the date on which the Certificate of Taking is recorded. General Statute 8-129.
The plaintiffs claim that, even though the statutory date of taking is March 12, 1991, the de facto date of taking occurred in 1986 when the City advised that it planned to condemn the property if a negotiated sale was not forthcoming.
Our Supreme Court has considered the question of de facto taking in Textron, Inc. v. Wood, 167 Conn. 334, 346. The opinion stated the following:
 "The situations in which the concept of de facto condemnation applies, however, are limited: Here planning by a government body in anticipation of the taking of land for public use and preliminary steps taken to accomplish this without the statutory filing of condemnation proceedings and without physical taking is not actionable by the owner." [citations omitted]. There must at least be some legal interference with the owner's power to disposition over the property, a substitution of the condemnor's dominion and control over the property for that of the condemnee. As this court has said: `The rule is firmly established in this state that where no land is physically taken and no interest affected in a manner detrimental to the owner, the prohibition contained in article first, 11 of our constitution against the taking of property for public use without just compensation does not apply.' Benson v. Housing authority. 145 Conn. 196, 200.
It is evident that matters were merely in the planning stage in this situation. There had been no action of dominion and control over the property by the City. Plaintiffs' claim, however, that equitable considerations should come into play. It is true that the property has been in a state of limbo over five year period, and this fact could lead to a conclusion that the plaintiffs were unduly and unconscionably harmed. However, the facts indicate otherwise. The plaintiffs obviously felt free to use their property for their own purposes. For example, they gave a lease to the subject property, along with their other contiguous parcels. This lease ran for twelve months beginning in July, 1988. This lease also gave the lessee an option to purchase the property. Such conduct on the part of the plaintiffs is inconsistent with any belief on their part that the property would be definitely taken. Moreover, they sought at numerous times to have the property removed from the CT Page 887 redevelopment plan, indicating that they felt that the City's plans as to the property were not inflexibly fixed upon condemnation.
The Textron case, supra, ruled in that de facto condemnation was involved. However, a close study of the facts in that case differ considerably from this one. Accordingly, it is concluded that a de facto taking did not occur.
 II.
AS TO THE DAMAGES
The views of the respective real estate appraisers are widely divergent. The plaintiffs' expert fixes the damages at $169,000. The defendant's appraiser sets them at $60,000. The plaintiff's appraiser has used as comparable sales only those which were in a business zone, even thought the subject property is zoned for residence only. The defendant's appraiser, on the other hand, has used only residential sales. The comparable sales used by the plaintiff's appraiser were in close proximity to the subject property, the sales used by the defendant' s expert, on the other hand, were at a substantial distance. It appears that there was dearth of suitable comparable sales.
The subject property (No. 70 Edwards Street, consisting of 24,420 square feet) was purchased by the plaintiffs in August 1986 along with a smaller parcel (No. 64 Edwards Street, consisting of over 8000 square feet). The subject parcel is in a Residence Zone; the adjoining smaller parcel is in a Business Zone, the total price paid for both was $175,000 coming to an average price of $5.24 per square foot.
The plaintiffs' appraiser stated that the value of the property was the same in 1986 as it was in early 1991, explaining that real estate values had continued to rise and later fell off to the same levels as in 1986.
Based upon my viewing of the property, and considering all the evidence, and my own knowledge of the elements constituting value, it is concluded that the damages sustained by the plaintiffs as a result of the taking were $115,000 on the basis of March 12, 1991 as the applicable date.
Judgment may enter in favor of the plaintiffs for the further sum of $55,000 in addition to the $60,000 already paid, together with interest on said further sum of $55,000 at the rate of 10% from March 12, 1991 to the date of payment, together with costs and an allowance of $800 as an appraisal fee. CT Page 888
ALEXANDER, STATE TRIAL REFEREE