[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION STATEMENT OF THE CASE
The plaintiff claims the defendant is liable for an unconstitutional taking of its real property, located in the City of New Haven and designated as part of a "Planned Development District" (PDD).
The sequence of events which led to this dispute dates from 1986 when the City formulated plans to utilize the former Lee High School site as the focus of a revitalization of the surrounding area. The plaintiff's predecessor in title acquired CT Page 4109-DDD the site in question on February 19, 1988 for $601,000.
In January 1989, the plaintiff received a legal notice of a public hearing scheduled for April 5, 1989 at which the PDD would be discussed. A representative of P L appeared at the public hearing, spoke with a city official and was shown a scale model of the proposed project. This model showed a medical building on a portion of the project area which included the P L site.
This representative, Arnold Lehrer, then spoke in favor of approval and on July 5, 1989, the Board of Aldermen issued the approvals required to create the PDD.
Each party has a version of discussions which occurred between July 14, 1989 and August 14, 1989, but on August 14, the plaintiff entered into a contract for sale of the property in question for the sum of $700,000. The purchaser was the Schnip Development Corporation, the preferred developer of the project. On September 6, 1989, Schnip entered into the Development Agreement which granted Schnip the right to develop the project in accordance with the master plan.
In February of 1991, Schnip breached the contract to purchase this parcel, having paid $75,000, as required by the contract to be paid prior to the closing date. In addition, the sum of $3,250 "as an addition to the Purchase Price" was paid to the plaintiff-seller on the first of the month commencing September 1, 1989. Apparently, these payments were made until February 1 of 1991, as that is the date the plaintiff alleges the breach occurred.
 I
The plaintiff argues that a combination of actions by the City combined to constitute a taking. One claim is that "the City's intention to acquire the P L property was fixed through its contractual obligations and thereby effected a de facto taking."
The plaintiff cites Textron. Inc. v. Wood, 167 Conn. 334, 348
(1974) for the proposition that
 "One way in which a governmental agency invades an owner's legal interests in property is where there is some indication that the agency's "intent to condemn the property in question has become fixed and irreversible." Id. at 348. CT Page 4109-EEE Thus, under Connecticut law, a taking may occur if a redevelopment plan or other government land acquisition plan is discontinued after the governmental entity has indicated through official actions its fixed intention to acquire the owner's land. See Id."
The circumstances in this case, however, are substantially dissimilar from the Textron case. In Textron, the court noted it was the city's intent to condemn, rather than the condemnation itself, that must be fixed. (Plaintiff's Brief, page 11).
Here, Philip Bolduc, city zoning director, met with P L principals and discussed development of the P L parcel, confining the development to the parcel as well as options available for additional parking outside the parcel. These options would have permitted more intensive building on the parcel itself. However, Mr. Bolduc pointed out that discussions were in general terms because P L had no specific plans and never presented a specific proposal. Further, he outlined the benefits accruing to the P L parcel by virtue of its inclusion in the PDD, not the least of which was the flexibility it presented to developing land owners. Mr. Bolduc also stated that P L could have been removed from the PDD but did not ask for this action to be taken. The most significant testimony from Mr. Bolduc dealt with the plaintiff's allegations that its property and its development was subject to the unfettered discretion of the Schnip Development Company. He stated that had P L asked for a change in the use of its parcel from that shown on the concept plan (where it was combined with other land to create a larger development parcel), the change would not have to be approved by Schnip but by the city planning office.
The testimony of Salvatore Brancati, director of business development for the city, is relevant to the plaintiff's taking claim. At a meeting in August of 1989 at which the plaintiff's counsel was present, the plaintiff sought to have Schnip acquire its property ahead of the projected acquisition schedule. Mr. Brancati stated that he presented the city's position to the representatives of Schnip, the plaintiff, and its principals. That position was that if Schnip did not acquire the P L parcel, the city would take the P L parcel out of the PDD if the plaintiff so requested.
These discussions were verified by the attorney who had been present representing the developer, Schnip. She stated that the CT Page 4109-FFF meeting was held because P L wanted Schnip to buy its property. Significantly, she also recalled that the plaintiff had been threatening to take an appeal from the decision which created the PDD unless Schnip bought the property. This action would have delayed the project. Mr. Brancati also recalled the threat of an appeal and that the plaintiff's principals had a sheriff standing by ready to serve the papers. He only left the meeting when an agreement was reached whereby Schnip agreed to purchase the P L parcel.
The question of P L's lack of control and Schnip's right to control was also addressed by Mr. Brancati who stated P L was free to develop its property and Schnip had no veto power. He noted no condemnations were ever requested in the PDD and none were ever perfected.
The plaintiff also cites Richmond Elks Hall Assoc. v.Richmond Redevelopment Agency, 561 F.2d 1327 (9th Cir. 1977) as an example of a case where a taking was found to have occurred. The court found the sale and development of land was limited through the city's declaration of a fixed intention to acquire the property. Six years elapsed between the time of the plan adoption and the city's decision not to acquire the property.
In this case, the entire process, from public hearing to the date of sale contract took less than a year! In fact, the city's contract with Schnip was executed after the Schnip-P L contract.
The court does not find in the sequence of events, commencing with the first legal notice and ending with the execution of the sale contract, any of the elements found in Elks Hall to constitute a taking. More specifically, its use was not limited since the plaintiff never presented a plan to develop the parcel. There was no evidence that lenders refused to make loans on the parcel. The plaintiff offered no evidence that the proceeds from rents were impaired.
The plaintiff did present the testimony of a real estate appraiser, Norman R. Benedict, who stated that the property had a value of $690,000 in the PDD. However, he opined, because of "Schnip having control over the property, the property has no market value." On cross examination, he conceded that the then existing use of the parcel was not its highest and best use and that the property would have benefitted [benefited] by being included in the PDD. CT Page 4109-GGG
There are two glaring fallacies in this expert opinion. First, there has been no evidence of the Schnip dominion which the plaintiff alleges and the city adamantly denies. Secondly, the opinion, reflecting the situation as of July 5, 1989 (the date of PDD approval), and this "worthless" property was the subject of a sale contract on August 14, 1989 for $700,000. Actually, that contract supports the experts first opinion that the property was worth $690,000 on July 5, 1989 as part of the PDD!
It is significant that though the plaintiff's witnesses testified that they had lost control of their property and the city had "wed" them to Schnip, there was never presented a plan for the property, no documents relating to financing, and no rejections from banks as to any proposal. In June of 1989, the plaintiff attempted to sell the parcel for $850,000 and had no takers. This fact by itself proves nothing, but could be a hint of things to come as this was when the state was experiencing the collapse of the real estate market.
 II
The plaintiff also argues that the city "substantially interfered with the basis rights incident to the ownership of private property" and this constituted a constructive taking.
While the plaintiff's brief outlines a scenario in which this plaintiff could have been harmed, none of the events complained of ever occurred and the plaintiff never found out what would happen to its plans because it did not have any. As the defendant notes, preliminary planning activities do not constitute a taking. (Citations omitted).
Further, as noted in Section I above, the court does not find a substantial interference with the plaintiff's rights. In fact, it would appear that the plaintiff was given every option available, even to that of being put back in its prior zone classification, by the city officials involved.
 III
The plaintiff has also claimed a taking by the city's actions under the "balancing" test. The plaintiff cites Connecticut law CT Page 4109-HHH on this issue as follows:
 "Short of regulation which finally restricts the use of property for any reasonable purpose resulting in a `practical confiscation,' the determination of whether the taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the land owner. [citations omitted] The financial effect on a particular owner must be balanced against the health, safety and welfare of the community." [citations omitted]
 The financial burden imposed on a land owner by a regulation is measured by the extent to which the regulation interferes with the property owner's reasonable investment backed expectations of the use of the property. [citation omitted] A regulation does not constitute a compensable taking if it does not infringe on such reasonable investment backed expectations.
Bauer v. Waste Management of Connecticut, 234 Conn. 221, 256-57
(1995); Chevron Oil Co. v. Zoning Board of Appeals, 170 Conn. 146,151 (1976).
The plaintiff states in his brief that the "reasonable investment backed expectations" were completely destroyed. However, the plaintiff presented no evidence to support this contention. As noted above, the plaintiff never submitted a plan or proposal and never asked the city to react to a proposal, except in very general terms in response to a "sketch," Exhibit E. This sketch shows apartment units and encompasses land the plaintiff did not own. This is not the concept discussed with Mr. Bolduc in which the plaintiff inquired about a day care facility to be located in a multi-story office building.
The court rejects this claim as totally unsupported by the plaintiff's evidence. Applying the balancing test, it is the conclusion of the court that the city's enactment of the PDD advanced a legitimate state interest and that the plaintiff's property was not deprived of value, nor of reasonable investment backed expectations.
IV
CT Page 4109-III
The defendant has interposed defenses to this action, some of which have been treated with above. It also argues that the plaintiff should be equitable estopped by virtue of its course of conduct commencing in 1988 and concluding with its sale of the property in 1989.
Principals of the plaintiff are both licensed real estate brokers and at least one of them, Mr. Rohinsky, is a veteran real estate investor. A conscious decision was made by him in 1988 to acquire this property, knowing and probably because the parcel was adjacent to the Lee High School project the city had been considering. The plaintiff's principals then learned of the proposed PDD, went to the public hearing, talked to city representatives and obviously considered more than one course of action to achieve a profit from the acquisition.
However, the most significant course of action taken was that of approaching Schnip to urge it to acquire the property. There is no question that the contract for Schnip to purchase this property was pushed hard by the plaintiff, to the point that an appeal of the PDD enactment was threatened. This tactic succeeded and the plaintiff received a $75,000 deposit plus payments of $3,250 a month till the closing, the total representing a fairly substantial profit from a parcel bought in 1988. Had Schnip paid the full price on schedule, or had it decided to pay in full and close a month after the executions of the sale contract, an action of this type would be seen as ludicrous.
Further, the plaintiff has not produced a scintilla of evidence to suggest that he entered into the contract with Schnip under duress but the plaintiff did produce the evidence from the attorney who represented Schnip to the effect that the plaintiff was anxious to have its property acquired and used the threat of the appeal to "induce" Schnip to acquire it.
While there may be elements of waiver in the action by the plaintiff to sell this parcel, the court feels the doctrine of estoppel should be invoked here to prohibit the plaintiff from profiting at the expense of the city after it has freely and voluntarily disposed of, at a profit, the parcel it claims the defendant took. While the plaintiff did not actually receive that profit, it still has its land, it received substantial payments on account, and it has acknowledged its true intent and its own perception of the state of affairs by suing Schnip for specific performance. CT Page 4109-JJJ
 V
Though the findings above preclude the plaintiff from recovering damages, the court notes, in addressing the plaintiff's damage claim, that even if one were to adopt the premise of a taking of the parcel, the plaintiff has not proven damages.
First, the testimony of Mr. Benedict was not convincing as the court noted in Section I above.
Second, the plaintiff entered into a contract for sale of the parcel at its considerable urging and by the use of the threat of litigation against Schnip and the project. This defendant had no part in the eventual default of Schnip.
CONCLUSION
The plaintiff has failed to prove a taking by the plaintiff and has not proven any damages, if a taking is presumed for argument's sake.
It conveyed at its behest the subject property, waiving any prior defect in the enactment and implementation of the PDD.
It cannot prevail on its convoluted theory that the city took its property, but that it entered into a contract to sell the same property, that it can pocket the down payment and partial payments, and without showing a single denial of any plan recover unproven damages.
Judgment may enter for the defendant.
Anthony V. DeMayo State Trial Referee