[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 2308
This court must determine whether the defendant's motion to dismiss should be granted based on the court's lack of subject matter jurisdiction because the defendant is immune from a cause of action where the plaintiffs' complaint does not sufficiently allege an unconstitutional taking.
The following facts are alleged in the plaintiffs' complaint. On and prior to December 26, 1997, the plaintiffs, Alan and Margaret Staack ("the Staacks"), owned real property located in the city of Norwalk, county of Fairfield and state of Connecticut. On or about December 27, 1997, the Staacks sold the property to the plaintiff, Homestead Village, Inc. ("Homestead") for one million, six hundred and fifty thousand dollars ($1,650,000).
Homestead owns and operates hotel developments and intended to use the property for the same purpose contingent upon applying to the planning zoning commission of the city of Norwalk for certain permits. Prior to the sale of the property Homestead consulted with surveyors and independent traffic study experts in order to obtain the necessary information and documentation required for said permits. Upon inquiry, the surveyors found two maps in the city of Norwalk lands records. One map was developed by the defendant, commissioner of transportation of the state of Connecticut ("State"), and filed with the town clerk of Norwalk on July 27, 1973 (Map No. 7769), and the other map was filed on November 10, 1975 in the city of Norwalk land records (Map No. 8041). The maps depicted a realignment of the street known as Creeping Hemlock Drive[1] for a proposed highway development which ran onto the plaintiffs' property. Upon further investigation, the department of transportation provided the surveyor for Homestead with prints, drawings, reports and maps relating to State Project No. 102-269, depicting the realignment of Creeping Hemlock Drive and a proposed taking of a portion of the subject property owned by the Staacks. Homestead was required by the local zoning authorities to adhere to the effects of the proposed taking line when applying for the permits.
By virtue of the proposed realignment, access from the plaintiffs' property to the adjoining property to the south was limited and/or denied and the plaintiffs allege that they were compelled to forfeit use and profitability of the impacted CT Page 2309 parcel. The plaintiffs further allege that the property was substantially interfered with and their capacity to freely use and dispose of the property was arrested, for all practical purposes, by the conduct of the defendant.
Since 1973, the defendant's conduct with respect to the Staacks' property, including the creation and filing of maps, drawings, reports and prints of the highway project, was public knowledge or available to the public within the commercial community of Norwalk and surrounding commercial communities. At or about the time when a contract was entered into between Homestead and the Staacks, the state, by public and private communications, announced it would take a portion of the subject property as depicted in Map No. 7769. Additionally, on or about March 10, 1998, the defendant held a public hearing on the highway development project (no. 102-269). The plaintiffs allege that as a result, the prospective taking of the property assumed all the appearances of finality even though the portion of land affected was not actually or physically appropriated because the defendant has not implemented its plan.
The plaintiffs further allege that as a result of the defendant's conduct, including the failure to implement the project within a reasonable time, and the public knowledge thereof, the Staacks lost their bargaining price and Homestead was forced to forfeit all use and profitability of the impacted parcel. Consequently, the portion of the plaintiffs' property contained in the proposed highway layout was taken for public purposes in the constitutional sense.
The defendant filed a motion to dismiss the claim alleging the court's lack of subject matter jurisdiction, supported by a memorandum of law as required by Practice Book § 10-31. The plaintiff filed a timely memorandum in opposition.
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991); see Practice Book § 10-31. "Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong." (Internal quotation marks omitted.) Doe v. Roe,246 Conn. 652, 661, 717 A.2d 706 (1998). "[I]n ruling upon whether a CT Page 2310 complaint survives a motion to dismiss, [the] court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Brunoli v. Branford, 247 Conn. 407, 410-411,722 A.2d 271 (1999).
The defendant moves to dismiss the action arguing that the court lacks subject matter jurisdiction because the plaintiffs' claim does not constitute a taking in the constitutional sense and absent an unconstitutional act, the allegations do not fall within an exception to the doctrine of sovereign immunity. The doctrine of sovereign immunity properly involves subject matter jurisdiction and therefore "[a] motion to dismiss is the appropriate procedural vehicle to raise a claim that sovereign immunity bars the action." Federal Deposit Ins. Corp. v. Peobody,N.E., Inc., 239 Conn. 93, 99, 680 A.2d 1321 (1996).
The plaintiffs argue in their memorandum in opposition to the motion to dismiss that the commissioner's actions diminished the value of the plaintiffs' property and made part of the property unusable for any reasonable and proper purpose. The plaintiffs further argue that the State's actions constituted a taking without just compensation in violation of their constitutional fights and therefore constitute a recognized exception to sovereign immunity.
"It is well established law that the state is immune from suit unless it consents to be sued by appropriate legislation waiving sovereign immunity in certain prescribed cases." Bresnan v.Frankel, 224 Conn. 23, 25-26, 615 A.2d 1040 (1992). But "[i]n a constitutional democracy sovereign immunity must relax its bar when suits against the government complain of unconstitutional acts." (Internal quotation marks omitted.) Pamela B. v. Ment,244 Conn. 296, 328, 709 A.2d 1089 (1998). "[T]he doctrine of sovereign immunity is not available to the state as a defense to claims for just compensation arising under article first, §11, of the Connecticut constitution." Textron, Inc. v. Wood,167 Conn. 334, 342, 355 A.2d 307 (1974). "State officials cannot therefore shield themselves with sovereign immunity if a party alleges and proves that they took or retained his real property in an manner which is either unconstitutional or unauthorized by statute." (Internal quotation marks omitted.) Horton v. Meskill,172 Conn. 615, 625, 376 A.2d 359, (1977). Here, "[t]o survive a motion to dismiss on the ground of sovereign immunity, [the CT Page 2311 plaintiffs'] complaint must allege sufficient facts to support a finding of a taking of land in a constitutional sense." (Internal quotation marks omitted.) Tamm v. Burns, 222 Conn. 280, 284,610 A.2d 590 (1992).
"The word taken in article first, § 11, of our state constitution means the exclusion of the owner from his private use and possession, and the assumption of the use and possession for the public purpose by the authority exercising the right of eminent domain. . . . Although property may be `taken' without any actual appropriation or physical intrusion . . . there is no taking in a constitutional sense unless the property cannot be utilized for any reasonable and proper purpose. . . ." (Internal quotation marks omitted; citations omitted.) Tamm v. Burns,
supra, 222 Conn. 284. Additionally, "[a] constitutional taking occurs when there is a substantial interference with private property which destroys or nullifies its value or by which the owner's right to its use or enjoyment is in a substantial degree abridged or destroyed." (Internal quotation marks omitted.) Tammv. Burns, supra, 222 Conn. 284. Although the state never appropriated the property at issue, inverse condemnation may occur "when there has been a taking, without compensation, for a public purpose, without an actual or physical appropriation of property." Citino v. Redevelopment Agency of the City ofHartford, 51 Conn. App. 262, 277, 721 A.2d 1197. "It is sufficient if the use of property is severely restricted and its profitability greatly reduced as a result of the action of the government." Id., 278-79.
The plaintiffs' complaint alleges that the defendant's actions, as well as failure to act, constitute a taking in the constitutional sense. They allege that as a result of the defendant's proposed highway development and the public knowledge thereof, and failure to implement the project within a reasonable time restricted the Staacks' capacity to freely use and dispose of the property arresting any reasonable and proper purpose. Furthermore, because Homestead was required to comply with zoning restrictions in accordance with the proposed development the plaintiffs allege that the portion of the plaintiffs' property contained therein was taken for public purposes. Consequently, the Staacks argue that they lost the price for which they had bargained when contracting with Homestead to sell the property, and Homestead lost all use and profitability of the impacted parcel. CT Page 2312
The state argues two specific points to support its position that no taking occurred. The defendant first argues that while a taking may occur in the absence of actual appropriation, mere planning activities by the government are not enough to effectuate a taking in the constitutional sense. The defendant compares the instant case to Textron, Inc. v. Wood, supra,167 Conn. 334, where the court stated that "there can be a de facto taking of private property by the state without any such actual, physical appropriation. . . . [H]owever . . . [m]ere planning by a government body in anticipation of the taking of land for public use and preliminary steps taken to accomplish this without the statutory filing of condemnation proceedings and without physical taking is not actionable by the owner." (Citations omitted.) Id., 346. More importantly, the court cited mere planning as insufficient because it did not rise to the level of significant interference. See id., 347. The court noted the need for "some definitive indication that the state's intent to condemn the property in question has become fixed and irreversible . . . therefore requiring the invasion of some specific legal interest in the property." Id., 348.
Like in the present case, the Textron court found that although the plaintiffs' land was never appropriated, a "substantial interference" occurred when state highway officials expressed their irreversible intent to take the plaintiff's land. See id., 349-50. The court noted that state highway officials revealed the irreversibility of their intent "by filing a map which had the statutory effect of depicting that property as part of a legally laid out state highway," publishing their intent to take the property when soliciting bids and communicating such intent to the landowner. Id., 349. The court held "[i]t would have been wholly futile . . . for [the plaintiff] to have seriously considered expanding its activities or its facilities . . . on the baseless hope that formal condemnation somehow would not occur." Id. As a result, the state substantially interfered and lessened the plaintiff's right to the use and enjoyment of the property. See id., 350.
In Santini v. Connecticut Hazardous Waste Management Service,251 Conn. 121, ___ A.2d ___(1999), the court noted that theTextron court drew the line between "mere governmental planning and preliminary steps in anticipation of condemnation, and . . . a fixed and irreversible decision by the state to exercise its power of eminent domain regarding the property in question." Id., 140. The determination of which has occurred must be made on the CT Page 2313 facts of each case. See Cohen v. Hartford, supra, 244 Conn. 221; see generally Textron, Inc. v. Wood, supra, 167 Conn. 350. Therefore, while the defendant uses Santini to further illustrate that the current plaintiffs were subjected to mere planning, the facts display government action more preliminary in nature than those alleged in the instant case and are clearly distinguishable. Unlike the instant case, the plaintiffs inSantini were one of three landowners whose property was designated as a potential waste site through a secret government selection process. Santini v. Connecticut Hazardous WasteManagement Service, supra, 251 Conn. 129. None of the sites were ultimately selected and the time period from the announcement of the possible site to the Governor's legislative proposal to rescind the acquisition of the public facility consisted of seven months. Id.
In the present case, the state created and filed maps pursuant to General Statutes § 13a-57, deeming such portion or section "to have been legally laid out as a state highway. . . ." General Statutes § 13a-57. The defendant also held a public hearing, announced publicly and privately that it would take the portion of land within the plaintiff's property, and enforced the proposed taking through local zoning regulations. These allegations go beyond the mere preliminary steps taken in Santini
and resemble the action taken by the government in Textron. The facts in the complaint sufficiently allege the defendant's unequivocal intent to take the plaintiffs' parcel for public purposes actions, thus going beyond mere planning activities. SeeCitino v. Redevelopment Agency, supra, 51 Conn. App. 281-82 (the failure to effectuate a redevelopment project with reasonable dispatch amounted to a taking for which damages were due).
The state also argues that mere diminution of property value is not sufficient to justify a taking, citing Tamm v. Burns, supra,222 Conn. 280. There, the plaintiff's property was exposed to "unpleasant sights, sounds and vehicle pollutants" upon the state removing trees and lawfully constructing a weigh station along the highway. Id., 288. There was no actual or physical taking, nor was there a plan to take any of the plaintiff's property. The court held that such allegations did "not support a claim of interference sufficiently grave to be deemed a `taking' in the constitutional sense;" id.; and suggested that the case was one of nuisance or some other tortious interference. See id., 285.
The instant case presents a distinguishable situation and the CT Page 2314 facts alleged in the complaint amount to more than the mere result of a total decrease in the value of the property. The plaintiffs allege that their parcel of land has been within the state's highway development plan for twenty-seven years requiring specific compliance with the restrictions in accordance with the proposed development, thus denying or limiting access to the adjourning property to the south and necessitating a forfeiture of all use of the portion of the parcel within the development plan.
Upon construing the facts alleged in the complaint in a manner most favorable to the plaintiffs, they sufficiently allege a taking, in the constitutional sense, of the plaintiffs property for public use. The alleged unconstitutional taking without due compensation falls within a recognized exception to the doctrine of sovereign immunity. The motion to dismiss is, therefore, denied because the plaintiffs' action is not barred by the doctrine of sovereign immunity.
KARAZIN, J